PEOPLE v JONES

Docket No. 59120. Submitted February 1, 1983, at Lansing.—Decided
    June 6, 1983. Leave to appeal applied for.

Walter L. Jones was convicted of larceny by false pretenses over
    $100 and, on his plea of guilty, of being an habitual criminal,
    Washtenaw Circuit Court, Patrick J. Conlin, J. Defendant
    appealed, raising several issues. *Held:*

    1. Defendant contended that his bind-over was improper. In
    order to bind over a defendant, the magistrate must find that a
    felony has been committed and that probable cause exists to
    believe defendant committed it. The elements of the offense of
    larceny by false pretenses over $100 are: 1) an intent to
    defraud, 2) the use of false pretenses or false representations of
    an existing fact, 3) the accomplishment of the intended fraud
    by means of such pretenses, and 4) the value of the property
    must be over $100. The false pretense does not have to be
    expressed in words but may be accomplished by an act. Value
    is an essential element of a charged crime where it differenti-
    ates a felony from a misdemeanor. In a prosecution for the
    crime of larceny by false pretenses over $100, the cashing of
    two separate instruments alleged to be travelers checks may be
    merged to obtain an amount over $100 where the cashing and
    representations as to each instrument were closely intertwined
    and the circumstances exhibited a continuous time sequence

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 772.
[2] 21 Am Jur 2d, Criminal Law §§ 412, 413.
[3] 50 Am Jur 2d, Larceny § 7.
    Attempts to commit offense of larceny by trick, confidence game,
        false pretenses, and the like. 6 ALR3d 241.
[4] 21 Am Jur 2d, Criminal Law §§ 28-30.
[5] 75 Am Jur 2d, Trial § 548 *et seq.*
[6] 29 Am Jur 2d, Evidence § 320 *et seq.*
    Admissibility, under Rule 404(b) of Federal Rules of Evidence, of
        evidence of other crimes, wrongs, or acts not similar to offense
        charged. 41 ALR Fed 497.
[7] 21 Am Jur 2d, Criminal Law § 171.
[8] 75 Am Jur 2d, Trial §§ 17-24.

and intent. The magistrate did not abuse his discretion in binding defendant over for trial.

2. The trial court did not abuse its discretion in denying defendant's motion for a directed verdict. When ruling on a motion for a directed verdict of acquittal, a court must consider the evidence which has been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

3. The trial court did not err in admitting evidence of other bad acts. Evidence of a defendant's similar bad acts other than the charged offense is inadmissible unless: 1) there is substantial evidence that defendant actually committed the other acts, 2) there are special circumstances pertaining to the similar acts which tend to show defendant's motive, intent, absence of mistake or accident, scheme, plan or system in committing the charged offense, and 3) the evidence is material to the determination of defendant's guilt for the charged offense. The evidence was material to the disputed element of intent to defraud.

4. The trial court erred in allowing the introduction of extraneous matters relative to defendant's codefendant, but the error was harmless.

5. The trial court did not err in refusing to grant a separate trial for defendant. The defenses offered were not antagonistic.

Affirmed.

1. CRIMINAL LAW — BIND-OVER — APPEAL.

A trial court, in reviewing a magistrate's decision to bind an accused over for trial, may not substitute its judgment for that of the magistrate; it may reverse only where it appears on the record that there has been an abuse of discretion.

2. CRIMINAL LAW — BIND-OVER.

In order to bind over a defendant, the magistrate must find that a felony has been committed and that probable cause exists to believe defendant committed it.

3. FALSE PRETENSES — STATUTES.

The elements of the offense of larceny by false pretenses over $100 are: 1) an intent to defraud, 2) the use of false pretenses or false representations of an existing fact, 3) the accomplishment of the intended fraud by means of such pretenses, and 4) the value of the property must be over $100; the false pretense

does not have to be expressed in words but may be accomplished by an act (MCL 750.218; MSA 28.416).

4. CRIMINAL LAW — FELONY — VALUE.

Value is an essential element of a charged crime where it differentiates a felony from a misdemeanor; in a prosecution for the crime of larceny by false pretenses over $100, the cashing of two separate instruments alleged to be travelers checks may be merged to obtain an amount over $100 where the cashing and representations as to each instrument were closely intertwined and the circumstances exhibited a continuous time sequence and intent.

5. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL.

When ruling on a motion for a directed verdict of acquittal, a court must consider the evidence which had been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

6. CRIMINAL LAW — EVIDENCE — OTHER BAD ACTS — STATUTES — RULES OF EVIDENCE.

Evidence of a defendant's similar bad acts other than the charged offense is inadmissible unless: 1) there is substantial evidence that defendant actually committed the other acts, 2) there are special circumstances pertaining to the similar acts which tend to show defendant's motive, intent, absence of mistake or accident, scheme, plan or system in committing the charged offense, and 3) the evidence is material to the determination of defendant's guilt for the charged offense (MCL 768.27; MSA 28.1050; MRE 404[b]).

7. CRIMINAL LAW — AIDERS AND ABETTORS — SPECIFIC INTENT.

A defendant must have had either the requisite specific intent or known that the actual perpetrator had the required intent in order to be held criminally liable for a specific intent crime as an aider or abettor.

8. CRIMINAL LAW — TRIAL — JOINDER — SEVERANCE.

A decision to try codefendants jointly or separately is in the discretion of the trial court; to find an abuse of discretion where a trial court has denied a motion for severance, it must be shown that the joint trial worked to prejudice the rights of at least one of the defendants.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*Don Ferris,* for defendant.

Before: T. M. BURNS, P.J., and CYNAR and ALLEN, JJ.

CYNAR, J. Defendant was charged with larceny by false pretenses over $100, MCL 750.218; MSA 28.415, and was further charged by supplemental information as an habitual offender, MCL 769.12; MSA 28.1084. On April 15, 1981, defendant was convicted by a jury of larceny by false pretenses over $100. On April 21, 1981, defendant pled guilty to the supplemental information and was sentenced to 5 to 20 years in prison with credit for 53 days of jail time. Defendant appeals as of right.

On September 25, 1980, defendant approached Katheryn Kiser, a cashier at Wolverine Truck Plaza in Washtenaw County, and asked if the truck plaza accepted traveler's checks. Kiser responded that it did. Defendant walked over to the attached plaza travel store and presented a check to a cashier. Shortly thereafter, Kiser received a request for assistance with the check from the travel store cashier. Kiser instructed the cashier to send defendant back to her and that she would cash the check for him. Defendant presented a United America Express "check" for $100 to Kiser. Defendant also presented a picture I.D., identifying himself as "P. K. Monyea". Kiser cashed the "check". Defendant went back to the travel store but returned about 10 to 15 minutes later, carrying a small paper bag, and asked Kiser to cash a second $100 "check". When Kiser stated that she

did not have enough money to cash another
"check", defendant responded that he was making
an $89 purchase in the travel store and that he
had already spent $30 from the first "check".
Kiser did not examine defendant's identification
because she had previously done so when cashing
the first "check". Kiser became suspicious after
she remembered that a similar instrument was
returned a few months before. She called Tele-a-
Credit, a check-guarantee service, to find out
whether they could tell her anything about the
"check". She then called the Washtenaw County
Sheriff's Department to find out if the "check" was
valid.

A deputy was dispatched, and defendant and
codefendant Robert Edward Lipscomb were ar-
rested about 40 minutes later while driving on I-
94. The vehicle was later searched pursuant to a
warrant. The police seized a briefcase containing
numerous "traveler's checks", identification cards,
credit cards and other miscellaneous items. A
search of Lipscomb's home in Ecorse produced
additional identification cards, a printing die block,
applications for social security cards, 713 United
America Express sight drafts with a total face
amount of $143,000, a checkbook from the Coa-
homa State Bank in Texas, and driver's licenses.
All of these items belonging to Lipscomb were
introduced into evidence at trial.

The two instruments cashed by Kiser were iden-
tified at trial as 30-day sight drafts issued by
"United America Express Money Order and Travel
Cheque Company", a company wholly owned by
Lipscomb. The routing numbers on the checks
were those of Coahoma State Bank in Coahoma,
Texas, a bank where Lipscomb had previously held
an account. Within 30 days after the "checks"

were cashed at the Wolverine Truck Plaza, an offer was made on behalf of defendant to pay on the instruments. Payment was refused.

Defendant raises a number of issues. He first contends that the evidence presented at the preliminary examination was not sufficient to bind him over on the charge of larceny by false pretenses over $100. We disagree.

In reviewing the decision of a magistrate to bind over an accused, the trial court may not substitute its judgment for that of the magistrate. The trial court may "reverse a magistrate's decision only if it appears on the record that there has been an abuse of discretion". *People v Talley,* 410 Mich 378, 385; 301 NW2d 809 (1981).

In order to bind over a defendant, the magistrate must find that a felony has been committed and that probable cause exists to believe defendant committed it. *People v King,* 412 Mich 145, 152-153; 312 NW2d 629 (1981); MCL 766.13; MSA 28.931. The magistrate has the duty to pass judgment not only on the weight and competence of the evidence but also on the credibility of the witnesses, and the magistrate may consider the evidence of the defense. The magistrate should not discharge the case when the evidence conflicts or raises a reasonable doubt of the defendant's guilt because that is a matter for the jury to decide. *King, supra,* pp 153-154.

The essential elements of the offense of larceny by false pretenses over $100 are (1) an intent to defraud, (2) the use of false pretenses or false representations of an existing fact, (3) the accomplishment of the intended fraud by means of such pretenses, and (4) the value of the property must be over $100. See *People v Taurianen,* 102 Mich App 17, 27; 300 NW2d 720 (1980).

The prosecution based its claim of larceny by false pretenses upon a showing that defendant and Lipscomb had deliberately represented the instruments as traveler's checks, which they were not, in order to deceive the cashier into cashing them.

A false pretense does not have to be expressed in words but may be accomplished by an act. *People v Vida,* 2 Mich App 409, 414; 140 NW2d 559 (1966), *aff'd* 381 Mich 595; 166 NW2d 465 (1969). The instruments were similar to traveler's checks in format, having a place for a signature and a countersignature. Additionally, the language on the instruments was similar to that of "American Express", a widely accepted traveler's check. The appearance of the "check", together with defendant's asking whether the truck plaza accepted traveler's checks, permits the inference that defendant intended the cashier to believe that he was presenting a traveler's check.

The pretense consisted of defendant's false representations that the two instruments were traveler's checks. The instruments were not traveler's checks because there was no money on deposit with a financial institution to cover the checks. Fraud was accomplished when the instruments were cashed under the impression that they were traveler's checks.

The value involved in the fraud is contested. Value is an essential element of a charged crime where it differentiates a felony from a misdemeanor. *People v Westman,* 53 Mich App 662, 664; 220 NW2d 169 (1974). Defendant claims that the two transactions for $100 each were improperly merged in order to reach the dollar amount necessary for the felony charge. In support of his position, defendant relies on *People v Robinson,* 97 Mich App 542; 296 NW2d 99 (1980), in which case the

defendant received nine separate checks for amounts of less than $100 at two-week intervals. This case is distinguishable. The representations and actions of defendant in cashing the first $100 "check", and reliance thereon by the cashier, were closely intertwined with the cashing of the second $100 "check" which took place about 10 to 15 minutes later. The cashing of the two "checks" exhibited a continuous time sequence and intent. The magistrate did not err in inferring that defendant intended to cash as many "checks" as possible without raising suspicion.[1]

The trial court did not abuse its discretion in denying defendant's motion for a directed verdict at the close of the prosecutor's case. All of the evidence presented by the prosecution up to the time the motion was made, viewed in a light most favorable to the prosecution, was sufficient so that a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

We are persuaded that the trial court did not err by admitting certain evidence.

Before evidence of other similar bad acts can be introduced at trial certain requirements must be met. See *People v Wilkins,* 82 Mich App 260, 267-268; 266 NW2d 781 (1978), *rev'd on other grounds* 408 Mich 69; 288 NW2d 583 (1980). First, there must be substantial evidence that defendant actually committed the other acts. Second, there must be some special circumstances pertaining to the similar acts which tend to show defendant's motive, intent, absence of mistake or accident,

---

[1] This issue was addressed and similarly resolved in the unpublished opinion for *People v Lipscomb,* Docket No. 55152, released February 28, 1983, on the appeal of the codefendant's conviction.

scheme, plan or system in committing the charged offense. See MRE 404(b) and MCL 768.27; MSA 28.1050. Third, the evidence must be material to the determination of defendant's guilt for the charged offense.

Where aiding and abetting may be the basis for guilt of a specific intent crime, "a defendant must have had either the requisite specific intent or known that the actual perpetrator had the required intent". *People v Wirth,* 87 Mich App 41, 46; 273 NW2d 104 (1978). See, also, *People v Harris,* 110 Mich App 636, 642-643; 313 NW2d 354 (1981).

Defendant's intent was disputed. Larceny by false pretenses over $100 requires intent to defraud. Standing alone, there is no misrepresentation by defendant asking the cashier, "Do you accept traveler's checks?" When viewed as part of the whole picture, however, the question points to defendant's knowledge of Lipscomb's intent and indicates intent on defendant's part.

Evidence of Lipscomb's prior transactions; *i.e.,* his numerous identification cards, social security cards, blank checks, printing blocks for making sight drafts and identifications, and checkbook from Coahoma State Bank, as well as testimony from a number of witnesses relative to these exhibits, was probative of Lipscomb's intent or scheme. The apprehension of defendant in Lipscomb's car, from which much of the evidence was confiscated, as well as the fact Lipscomb testified that he had known defendant since 1979 and that defendant had done considerable work for Lipscomb, including painting Lipscomb's house in Ecorse from which most of the remaining evidence was gathered, on being viewed as part of the total picture are evidence from which it is reasonable to

infer that defendant had knowledge of these items. Knowledge of these items points to defendant's knowledge of Lipscomb's intent. Admission of this evidence was probative of defendant's intent. There was no error in admitting evidence of the codefendant's acts because such evidence was also relevant to defendant.

Further, testimony that defendant had passed a bad "check" on September 13, 1980, in New Baltimore was also probative of defendant's intent or scheme. Defendant presented a "check" similar to the two in question in this case using a Michigan driver's license with the name "P. K. Monyea" on it and cashed a "check" bearing the name of "P. K. Monyea". Testimony also indicated that on September 13, 1980, a similar "P. K. Monyea" transaction involving Lipscomb took place in Imlay City and another "P. K. Monyea" transaction took place in Lapeer. Even if evidence of the acts in Imlay City and Lapeer were to be considered as improperly admitted, the quantity and quality of the other evidence makes such error harmless beyond a reasonable doubt. *People v Wright,* 408 Mich 1; 289 NW2d 1 (1980).

Occasionally, trial counsel, having presented a strong case, will overdevelop a point or over-pursue an issue, thereby unnecessarily inviting possible error.

The prosecution introduced pleadings, restraining orders and the opinion of a federal district court judge from a trademark infringement suit against codefendant Lipscomb. During closing argument, the prosecutor read extensively from the opinion. Defendant contends this was prejudicial because the jury was told that a federal judge had already found Lipscomb, and therefore defendant, to have proceeded wilfully and knowingly in using

deceptive documents, the ultimate issue in our case. The prosecutor does not contend here that this evidence was relevant to showing defendant's intent. There being no showing of relevance to defendant, the prejudicial effect of the evidence outweighed any probative value.

Although the prejudicial effect of introducing the federal court's disposition of Lipscomb's suit outweighed any probative value, this fact does not necessarily require reversal. We note that defendant objected to the introduction of the evidence but did not request specific limiting instructions. Additionally, defendant had the benefit of a number of cautionary instructions. The jurors were cautioned to consider each defendant separately, to consider which evidence was relevant to each defendant, and to consider that not all the evidence was relevant to both. The jurors were further cautioned that certain evidence was before them only for a limited purpose. The standard jury instruction on multiple defendants, CJI 3:1:14, was given at the beginning and repeated at the end of the trial. Instructions on the required elements of proof of guilt for aiders and abettors as well as a definition of reasonable doubt further clarified for the jurors the separate tasks they faced in reaching a decision as to each defendant. After viewing the instructions as a whole, the admission of the contested evidence was not reversible error.

The remaining issue meriting discussion concerns a denial of defendant's request for a separate trial. The decision to hold a joint trial is within the trial court's discretion. To find an abuse of discretion, an affirmative showing must be made that the joint trial prejudiced the rights of at least one of the defendants. *People v Webb,* 82 Mich App 182; 266 NW2d 483 (1978), *lv den* 404 Mich

809 (1978). Joint trials are strongly favored in the interests of justice, judicial economy and administration. *People v Carroll,* 396 Mich 408, 414; 240 NW2d 722 (1976). Defendant did not have a right to a separate trial. Severance is necessary only when defenses are antagonistic. *People v Harris, supra,* pp 648-649.

The defendants did not advance antagonistic defenses. Both defendants claimed that there were two transactions, that there was no fraud or false pretense because the instruments were sight drafts calculated to return to defendant Lipscomb in the normal course of commerce, and that the "checks" were future promises to pay. Denial of the motion for separate trials was within the sound discretion of the trial court.

Affirmed.