PEOPLE v HARAJLI

Docket Nos. 93595, 93596, 93597, 93598, 93599, 93601, 95446. Submitted May 8, 1987, at Detroit. Decided July 7, 1987. Leave to appeal denied, 429 Mich —.

Zouhair Mohamad Harajli, Youssef Alice Dakroub, Jerry Fawaz and others were charged with various felony counts of obtaining money under false pretenses. Defendants owned or operated gasoline stations which were the subjects of an investigation by the Michigan State Police. The investigation disclosed that defendants misrepresented that a full measure of gasoline was being delivered to customers at the price per gallon shown on the pump display. Additionally, some defendants misrepresented that they were selling high-octane gasoline. In none of the transactions during the course of the investigation were the undercover officers defrauded of an amount in excess of $100. Likewise, no customer had been defrauded of an amount in excess of $100 per transaction. In charging defendants with felonies, the prosecution aggregated the amounts of actual undercover buys together with statistical projections for amounts of money obtained during the same period of time for all customers using defendants' pumps. In Docket No. 95446, the felony portion of the charges was dismissed by the examining magistrate and the dismissal was affirmed in Detroit Recorder's Court, Donald L. Hobson, J. In Docket Nos. 93595, 93597 and 93601, the examining magistrates bound defendants over on the felony charges, but the Detroit Recorder's Court, Donald L. Hobson, J., and Michael F. Sapala, J., dismissed them. In the remaining cases, defendants waived their rights to preliminary examination, and the felony charges were dis-

REFERENCES

Am Jur 2d, Criminal Law, §§ 19-21, 334, 551-556.

Am Jur 2d, False Pretenses, §§ 1-4, 12, 15, 16.

Am Jur 2d, Fraud and Deceit, §§ 1, 2, 17, 20, 26, 41, 42, 182.

Am Jur 2d, Larceny, §§ 2-4, 7, 27, 28, 165.

Series of takings over a period of time as involving single or separate larcenies. 53 ALR3d 398.

Single or separate larceny predicated upon stealing property from different owners at the same time. 37 ALR3d 1407.

missed by the Detroit Recorder's Court, Donald L. Hobson, J. The people appealed and the appeals were consolidated.

The Court of Appeals *held:*

A separate misrepresentation was required each time a customer bought gasoline from defendants. There was a different misrepresentation in each purchase, showing a different false amount of gasoline pumped into a different tank at a different total price and there were different victims as well. Thus, each transaction was a separate and distinct misdemeanor and the transactions, when viewed as a whole, did not constitute a series of acts in a continuous time sequence displaying a single intent and goal.

Affirmed.

1. CRIMINAL LAW — SINGLE TRANSACTION TEST.

The test for whether separate acts constitute a single crime or multiple crimes is whether the acts occurred in a continuous time sequence and displayed a single intent and goal.

2. LARCENY — MISREPRESENTATION — CRIMINAL LAW.

Different misrepresentations to different victims, made at different times, constitute different offenses even if they occur at the same place and pursuant to one overall scheme.

3. FALSE PRETENSES — LARCENY OVER $100 — AGGREGATION OF OFFENSES.

It is improper to charge larceny over $100 by false pretenses where the defendant obtains money aggregating over $100 by falsely representing the amount or quality of gasoline sold to purchasers, no one of whom is defrauded of money in excess of $100 in any of the separate sales transactions.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

*Edward F. Bell,* for defendants Zouhair Harajli and Zippy Sales, Inc., and Ahmed Harajli, Khalil Harajli, Desert Sands, Inc., Camel Sales, Inc., Nancy Sales, Inc., and K and A Petroleum, Inc.

*Neil H. Fink,* for defendants Jerry Fawaz and Froggy's Fill-up, Inc.

Before: BEASLEY, P.J., and HOOD and E. E. BORRADAILE,* JJ.

BEASLEY, P.J. The various defendants in these consolidated cases were charged with various counts of obtaining money over $100 by false pretenses, contrary to MCL 750.218; MSA 28.415. In each case, there was a conflict over whether various amounts of money obtained could be aggregated in order to charge defendants with the felony charge of obtaining money of a value greater than $100 by false pretenses, rather than the misdemeanor of obtaining money of $100 in value or less. In Docket No. 95446, the felony portion of the charge was dismissed by the examining magistrate, who refused to bind over on that count. In Docket Nos. 93595, 93597 and 93601, the examining magistrates bound defendants over on the felony charge, but the Recorder's Court dismissed it. In the remaining cases, defendants waived preliminary examination and the felony charges were dismissed in the Recorder's Court. From all these decisions, the prosecutor appeals.

All defendants owned or operated filling stations and allegedly misrepresented that a full measure of gasoline was being delivered to the customer at the price per gallon as shown on the pump display. The evidence indicated that in fact the pumps had been tampered with and recalibrated to alter the flow of fluid through the pump. The Michigan State Police set up a number of undercover buys from these stations in which an investigator would purchase gasoline using a car equipped with a special tank, which would permit the Department

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of Agriculture to measure the amount of gasoline actually dispensed. All defendants allegedly were giving out less gasoline than they charged for. Additionally, some defendants misrepresented that they were selling high-octane gasoline when, in fact, they were not. In each instance, the actual amount of which the officer was defrauded was considerably less than $100.

In order to reach the statutory requirement of "over $100," making the offense a felony, the prosecutor aggregated the amounts of actual undercover buys together with the statistical projections for the amounts obtained during the same period of time for all customers using those pumps. The question before us is simply this: Was there a separate misdemeanor committed every time an officer or customer bought gasoline at the misrepresented price and amount, or did each defendant instead engage in a course of conduct over time which amounted to a single felony? The prosecutor points out that the defendants cannot plausibly be imagined to be switching the pump calibrations back and forth with tremendous frequency, so that once a pump was registering falsely, it did so over an extended period of time. However, it is also unquestioned that each customer who would have been defrauded under such a scheme would have lost much less than $100 at any one time, so that to see this as a felony one must view the "victim" of the singular felony to be either the aggregate mass of defrauded customers or the public at large.

The criminal statute involved, MCL 750.218; MSA 28.415, provides in pertinent part:

> Any person who, with intent to defraud or cheat, shall designedly, . . . by any . . . false pretense, . . . obtain from any person any money

or personal property . . ., or by means of any
false weights or measures obtain a larger amount
or quantity of property than was bargained for, or
by means of any false weights or measures sell or
dispose of a less amount or quantity of property
than was bargained for, if such . . . money, per-
sonal property, . . . larger amount obtained or less
amount disposed of, shall be of the value of
$100.00 or less, shall be guilty of a misdemeanor;
and if such . . . money, personal property, . . .
larger amount obtained or less amount disposed of
shall be of the value of more than $100.00, such
person shall be guilty of a felony, punishable by
imprisonment in the state prison not more than 10
years or by a fine of not more than $5,000.00.

The courts below all relied on *People v Robin-
son*[1] in reaching their decisions. In *Robinson,* the
defendant became employed, but continued to re-
ceive unemployment checks. She received nine
biweekly checks, no one of which was for more
than $84, but which nine checks totalled more
than $100. This Court said that it was impermissi-
ble to charge her with one count of felony false
pretenses instead of the individual misdemeanor
counts. The Court borrowed some reasoning from
the "same transaction" test used in double jeop-
ardy cases, in which the crucial question is
whether "the series of acts were in a continuous
time sequence and displayed a single intent and
goal."[2] Here is the Court's conclusion:

> We are of the opinion that in the instant case
> defendant's individual and separate acts did not
> meet the criterion of the same transaction test,
> *viz.,* occurring in a continuous time sequence and
> displaying a single intent and goal. Initially, we
> note that there was a two-week interval between

[1] 97 Mich App 542, 550-552; 296 NW2d 99 (1980).
[2] *Id.* at 551.

each of defendant's nine larcenies. Furthermore, as each act necessitated an additional false statement, they were not the result of a single intent and goal. Every two weeks, defendant had to make another false statement in order to get an additional separate and distinct benefits check. Since defendant could only receive another check after falsely swearing anew that she had not worked and thus was still eligible for unemployment benefits, each of the misrepresentations was distinct and separate.[3]

The situation in *Robinson* is similar to this one, in that a separate misrepresentation was required each time a customer bought gasoline from the filling station. Indeed, there was a *different* misrepresentation in each purchase, showing a different false amount of gasoline pumped into a different tank at a different total price. Because there were differing victims as well, it appears that the facts before us describe an even more clearly cut group of different misdemeanors than in the *Robinson* case. There, at least, one could argue that there was a single victim whose aggregate loss amounted to more than $100.

The *Robinson* Court placed a great deal of reliance on the 1890 case of *People v Johnson*,[4] in which the defendant was held to have committed one large theft, rather than two small thefts, when he took property belonging to two people, but did it at the same time and place. The *Johnson* Court said:

Two distinct felonies cannot be charged in one count of an information. Neither can two or more charges for larceny, not within the jurisdiction of the circuit court to try by virtue of its original jurisdiction, be united in one count, so as to bring

[3] *Id.* at 551-552.
[4] 81 Mich 573, 576; 45 NW 1119 (1890).

the larceny within the original jurisdiction of the court. A single offense of larceny may be charged in one count, where the articles stolen are of different values, and belong to different owners. The criterion is, was the larceny one act, committed at one time and place? If so, the property stolen may be of different kinds and values, and belong to different persons.[5]

The prosecutor argues that the precedent and reasoning used in *Robinson* were undermined, if not eliminated altogether, by the Supreme Court's decision in *People v Wakeford*.[6] But, *Wakeford* was not concerned with the aggregation of misdemeanors into felonies, nor with larceny or false pretenses, nor did it ever mention *Robinson*. It was concerned, instead, with application of the double jeopardy prohibition, holding that where a defendant first holds up one cashier in an establishment at gunpoint and then goes over to another cashier and does the same, he may be charged with two counts of armed robbery rather than only one.

The prosecutor, however, cites this Court's decision in *People v Vargo*[7] for the proposition that *Wakeford* did away with *Robinson*. While *Vargo* may have suggested, perhaps too quickly, that *Wakeford* did away with the "same transaction" test, this is clearly not the case. Instead, the *Wakeford* Court rejected any application of the test which would prevent a defendant from being charged with multiple counts of a felony he committed in a single crime spree.[8] The question, the Court said, is not whether the defendant committed one single wrongful act, but rather whether the Legislature authorized multiple punishment

[5] *Id.*

[6] 418 Mich 95; 341 NW2d 68 (1983).

[7] 139 Mich App 573; 362 NW2d 840 (1984).

[8] *Wakeford, supra* at 104-105, n 7, also at 113.

under the circumstances.[9] Indeed, the *Wakeford* Court approved of *Johnson,* relied on by the *Robinson* Court, and went on to say that "[t]he appropriate 'unit of prosecution' for larceny is the taking at a single time and place without regard to the number of items taken."[10]

We also observe that *Vargo's* primary reason for not applying *Robinson* was not *Robinson's* alleged overruling by *Wakeford,* but rather the differing circumstances in *Vargo* and *Robinson.* The *Vargo* Court itself said that the differing facts were more important than *Wakeford's* effect on *Robinson.* Specifically, *Vargo* concerned the violation of a different statute, to wit, one prohibiting welfare fraud.[11] That statute does not require a renewed misrepresentation for each offense and Vargo himself had not made any new representations; he had simply failed to inform the Department of Social Services when his circumstances changed. The difference is that in *Robinson* the defendant had to make a new false statement every time she got her check, but Vargo did not.

There are cases in which aggregation of acts in a criminal prosecution has been allowed, but each of these cases has taken care to distinguish itself from *Robinson.* In *People v Igaz,*[12] for example, the defendant was charged with unauthorized use of a telephone. The relevant statute, MCL 750.219a; MSA 28. 416(1), specifically looked to situations in which "the *total value* of telephone service obtained exceeds $100."[13] The *Igaz* Court pointed out that, unlike the false pretenses statute, the unau-

[9] *Id.* at 111.

[10] *Id.* at 112.

[11] MCL 400.60(2); MSA 16.460(2).

[12] 119 Mich App 172, 180-181; 326 NW2d 420 (1982), vacated on other grounds 418 Mich 893 (1983).

[13] *Id.* at 180, quoting MCL 750.219a; MSA 28.416(1).

thorized use of telephone statute does not require continuous time sequence or single intent.

Similarly, the Court in *People v Jones*[14] permitted the aggregation of two checks the defendant cashed with the same cashier within fifteen minutes of each other, where the cashier did not ask to see defendant's identification on the second occasion because she had seen it fifteen minutes earlier. There, too, the Court made a point of distinguishing the facts before it from those in *Robinson* by saying that the "representations and actions of defendant in cashing the first $100 'check', and reliance thereon by the cashier, were closely intertwined with the cashing of the second $100 'check' . . . . The cashing of the two 'checks' exhibited a continuous time sequence and intent."[15]

Here, the various undercover buys by the police took place, in some cases, months apart. Were the prosecutor to charge a defendant with two separate crimes for two transactions taking place in October and December, it would be ludicrous to say that the defendant would thereby be placed twice in jeopardy for the same offense. While we may sympathize with the prosecutor's feeling that what defendants did was simply more serious than a number of petty misdemeanors, the question is not how serious the conduct was, but which part of the statute it violated. We agree with the courts below that different misrepresentations to different victims, made at different times, constitute different offenses even if they occur at the same place and pursuant to one overall "scheme."

The prosecutor says that defendants have placed themselves in a highly regulated area and should, therefore, be subject to a myriad of restrictions designed to protect the public from various kinds

---

[14] 126 Mich App 191, 198; 336 NW2d 889 (1983).

[15] *Id.* at 198.

of fraud. The prosecutor cites mainly the Weights and Measures Act.[16] The prosecutor may be correct, but that does not change the wording of the false pretenses statute. If other statutes are to protect the public from defendants, then those other statutes should be the basis for the prosecution.[17]

Affirmed.

---

[16] MCL 290.601 *et seq.;* MSA 12.1081(1) *et seq.*

[17] We note, in particular, that had these events occurred after September 15, 1986, defendants might well be guilty of felonies under § 31(3) of the Weights and Measures Act, MCL 290. 631(3); MSA 12, 1081(31)(3), as amended by 1986 PA 194, § 1.