## PEOPLE v WAKEFORD

Docket No. 64385. Argued March 9, 1983 (Calendar No. 8).—Decided
  November 23, 1983.

  Patrick Wakeford was convicted by a jury in the Wayne Circuit
  Court, Joseph B. Sullivan, J., of two counts of armed robbery
  arising from the robbery of two cashiers in a grocery store. The
  Court of Appeals, Allen, P.J., and Bashara and Beasley, JJ.,
  affirmed in an opinion per curiam. The defendant appeals,
  alleging that his convictions violated his right against being
  placed twice in jeopardy, that evidence of his prior convictions
  was inadmissible for purposes of impeachment and as substan-
  tive evidence of similar acts, and that he was denied the right
  to counsel during trial and at the time of sentencing.

    In an opinion by Justice Ryan, joined by Chief Justice Wil-
  liams and Justices Brickley and Cavanagh, the Supreme Court
  *held:*

    Robbing two cashiers in one grocery store was not a single
  offense under the armed robbery statute, but two separate and
  distinct offenses, because the appropriate "unit of prosecution"
  is the person assaulted and robbed, not the property taken. The
  admissibility of evidence of the defendant's prior convictions
  was discretionary with the trial court, and there was no abuse
  of discretion in holding them admissible under the standards in
  effect at the time of trial. Although the defendant was not
  denied his right to counsel during trial, the failure of the trial
  court to obtain a knowing and intelligent waiver of the right to

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 6, 7] 21 Am Jur 2d, Criminal Law §§ 21, 267, 551 *et seq.*
  67 Am Jur 2d, Robbery §§ 4, 7, 48, 97.
  Prosecution for robbery of one person as bar to subsequent prosecu-
  tion for robbery committed of another person at the same time.
  51 ALR3d 693.
[2] 29 Am Jur 2d, Evidence § 327.
[3] 75 Am Jur 2d, Trial § 17 *et seq.*
[4] 21 Am Jur 2d, Criminal Law § 580.
  21A Am Jur 2d, Criminal Law § 989.
[5] 67 Am Jur 2d, Robbery §§ 1, 21.

counsel at the sentencing requires a vacation of the sentences and a remand for resentencing.

1. The critical inquiry in determining whether multiple prosecutions and punishments violate a defendant's right against being placed twice in jeopardy is whether the prosecutions and punishments were for the same offense. The term "same offense" has a broader meaning where a subsequent prosecution is involved than where the prosecutions and punishments occur in a single trial. Where, as in this case, multiple punishments are imposed for convictions of armed robberies of different persons which occurred at the same time and place, the double jeopardy claim is resolved by ascertaining and enforcing the intent of the Legislature in defining the criminal offense involved and prescribing its punishment. The gravamen of the offense of armed robbery is the armed assault on a person combined with the taking of money or property. The appropriate unit of prosecution of armed robbery is the person assaulted and robbed by the armed assailant, not the taking at a single time and place without regard to the number of items taken, appropriate to larceny. Additional punishment may be warranted for each armed robbery of a different victim. The concurrent sentencing scheme in Michigan avoids the principal harshness that might result from multiple convictions and supports the view that the Legislature intended to permit separate convictions of armed robberies of multiple victims.

2. At the time of the trial in this case, the trial court was obligated to exercise its discretion in admitting evidence of the defendant's prior convictions by determining whether the prior offenses were similar to the charged offenses, whether the recency of the prior offenses would have been probative of the defendant's veracity during trial should he have elected to testify, and whether it was important to the truth-seeking process to obtain the defendant's version of the events in question. No inference of an affirmative misapplication of these determinants can be drawn from the record, and the record is devoid of any indication that the defendant, in the light of the overwhelming evidence of his guilt, was unfairly prejudiced by the trial court's ruling. The Rule of Evidence requiring articulation on the record by the trial court of the factors considered in admitting evidence of prior convictions was not in effect at the time of trial.

3. The refusal of the trial court to grant the defendant a trial separate from a codefendant and separate counsel did not amount to a denial of his right to counsel. Joinder of the defendants was discretionary with the trial court, no inconsis-

tency between the defenses of the defendants sufficient to create affirmative prejudice was shown, and no conflict of interest on the part of defense counsel which denied the defendant a fair trial was demonstrated.

4. The defendant's waiver of his right to counsel during trial was not coerced and was valid. However, there is no record that there was an affirmative waiver by the defendant of the right to counsel at sentencing or that the defendant was clearly informed of his right to counsel at public expense for that occasion, requiring vacation of the sentences and remand for resentencing.

Convictions affirmed, sentences vacated, and case remanded.

Justice Levin, concurring in part and dissenting in part, agreed that evidence of the defendant's prior convictions was admissible and that the trial court's failure to obtain a knowing and intelligent waiver of the right to counsel at the time of sentencing requires resentencing. However, he would vacate one of the convictions of armed robbery because only one robbery was committed.

1. The Legislature, in enacting the statutory crime of robbery, codified the elements of the common-law robbery offense. At common law, robbery was universally viewed as aggravated theft, not aggravated assault. An assault aggravates a taking from theft to robbery, but that does not permit the inference that the number of persons assaulted determines the number of robberies which have been committed. A statute in which an offense has been proscribed in the terms of the common law should be construed in accordance with the principles developed by the common law on the presumption that the Legislature intended no alteration or innovation in the common law not expressly stated or declared. Absent such a clear and unmistakable legislative intent to alter the common-law rule that robbery is aggravated theft, the rule of lenity and case law mandate that only a single conviction and punishment should be imposed for the robbery of two cashiers in one store. Therefore the defendant's second robbery conviction should be vacated.

2. It is questionable whether the Supreme Court can change the codified common-law rule that robbery is aggravated theft. Even if the rule may be judicially modified, such an alteration should be made only after a more thorough consideration of the justification for the change of the rule and its consequences has been undertaken. Absent such consideration, the common-law rule that robbery is aggravated theft should be retained, and the Court should hold that a theft of a store's money is one

robbery whether one or more than one employee or cashier is assaulted during the holdup.

Justice Kavanagh concurred in the result reached by Justice Levin. The concept of double jeopardy is concerned with multiplication rather than magnification; it precludes multiple charges and multiple punishment for a single crime. The single act of holding up one grocery store should be punished as one crime without regard to how many persons happen to be on the premises or who held title to the property taken; the number of people affected by a criminal act magnifies but does not multiply the crime.

94 Mich App 249; 288 NW2d 381 (1979) affirmed.

OPINION OF THE COURT

1. ROBBERY — ARMED ROBBERY — MULTIPLE PUNISHMENT — DOUBLE JEOPARDY.

The offense of armed robbery involves the armed assault and robbery of a person, and armed assaults and robberies of different persons may be prosecuted and punished as separate offenses without violating a defendant's right against being placed twice in jeopardy even though the robberies occur at the same time and place (US Const, Ams V, XIV; Const 1963, art 1, § 15; MCL 750.529; MSA 28.797).

2. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVICTIONS — ADMISSIBILITY.

Admission of evidence of a defendant's prior convictions for purposes of impeachment and as substantive similar-acts evidence did not unfairly prejudice a defendant where other evidence of his guilt was overwhelming, no inference could be drawn from the record that the trial court failed to consider whether the prior offenses were similar to the offenses charged, whether the recency of the prior offenses would be probative of the defendant's veracity if he chose to testify, and whether it was important to the truth-seeking process to obtain the defendant's version of the events, and the Rule of Evidence which required articulation on the record by the trial court of the factors considered in admitting the evidence was not in effect at the time of trial (MRE 609[a][2]).

3. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO COUNSEL — TRIAL.

Refusal of a trial court to grant a defendant a separate trial from a codefendant and separate counsel did not amount to a denial of his right to counsel where joinder of the defendants was

discretionary with the trial court, no inconsistency between the defenses of the defendants sufficient to create affirmative prejudice was shown, and no conflict of interest on the part of defense counsel which denied the defendant a fair trial was demonstrated (US Const, Ams VI, XIV; Const 1963, art 1, §§ 17, 20).

4. CRIMINAL LAW — CONSTITUTIONAL LAW — RIGHT TO COUNSEL — SENTENCING.

The absence of an affirmative waiver by a defendant on the record at the time of sentencing of his right to counsel and failure of the trial court to inform the defendant of his right to counsel at public expense during the sentencing procedure required vacation of the sentences imposed and a remand for resentencing (US Const, Ams VI, XIV; Const 1963, art 1, §§ 17, 20; GCR 1963, 785).

OPINION CONCURRING IN PART AND DISSENTING IN PART BY LEVIN, J.

5. ROBBERY — COMMON LAW.

*Robbery at common law and as codified in the Penal Code is aggravated theft and not aggravated assault; an assault aggravates a taking from theft to robbery, but does not permit the inference that the number of persons assaulted in one holdup determines the number of robberies which have been committed; thus, the robbery of two cashiers in one store is a single robbery (MCL 750.529; MSA 28.797).*

OPINION BY KAVANAGH, J.

6. CRIMINAL LAW — MULTIPLE PUNISHMENT — DOUBLE JEOPARDY.

*The concept of double jeopardy is concerned with multiplication rather than magnification and precludes multiple charges and multiple punishment for a single crime; the number of people affected by a criminal act magnifies but does not multiply the crime (US Const, Ams V, XIV; Const 1963, art 1, § 15).*

7. ROBBERY — MULTIPLE PUNISHMENT — DOUBLE JEOPARDY.

*The single act of holding up one grocery store should be punished as one crime without regard to the number of persons who happen to be on the premises at the time of the robbery or who hold title to the property taken; to divide one criminal act into many parts and treat each as a separate crime offends the concept of double jeopardy (US Const, Ams V, XIV; Const 1963, art 1, § 15; MCL 750.529; MSA 28.797).*

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Frank J. Bernacki,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford*) for the defendant.

RYAN, J. There are three issues presented on this appeal:

Whether the defendant's conviction on two counts of armed robbery for a holdup in a grocery store violates the double jeopardy provisions of the United States and Michigan Constitutions;

Whether the trial court erred in ruling that evidence of the defendant's prior convictions was admissible for purposes of impeachment and as substantive similar-acts evidence; and

Whether the defendant was denied the right to counsel during the trial or at sentencing.

Specifically, we hold that:

The defendant was not unconstitutionally multiply punished for the same offense, but was convicted of two separate and distinct offenses;

The trial judge did not abuse his discretion in ruling that evidence of the defendant's prior convictions was admissible; and

The defendant was not denied his constitutional right to counsel during trial; however, the trial court's failure to obtain a knowing and intelligent waiver of the right to counsel at the time of sentencing requires resentencing.

The defendant, Patrick Wakeford, was convicted by a jury of two counts of armed robbery[1] and one count of possession of a firearm during the com-

---

[1] MCL 750.529; MSA 28.797.

mission of a felony[2] for his participation in a
holdup of a Dearborn Heights market on September 28, 1977. The trial testimony indicated that on
the evening in question a young white male, wearing a green jump suit, sunglasses, a blond wig, and
a camouflage hat, entered the market. Carrying a
sawed-off shotgun wrapped in a green garbage bag,
he went to a cash register, pushed the cashier
aside, and removed money and checks from the
register. He proceeded to the manager's office
about 20 feet away, where he demanded and received money from a second cashier who was in
the process of balancing her cash receipts. The
robber then ran from the store and jumped into
the back seat of a white four-door automobile,
which was driven away at a high speed.

A short time later in a nearby residential area,
a witness observed two persons get out of a white
four-door automobile. One appeared to throw
something into some bushes. Both men then returned to the car and drove away. When the
witness went to investigate, he found something in
the bushes that looked to him like a rifle. The
police were summoned and discovered a shotgun
wrapped in a green garbage bag, a green jump
suit, sunglasses, a blond wig, a camouflage hat,
and the cash and checks taken in the robbery. The
police took possession of the items.

The police immediately "staked out" the area
around the bushes. A few hours later, two people
drove up in a white car, got out of the vehicle, and
proceeded to the hedge where the confiscated items
had been found. Finding nothing there, the two
individuals ran from the scene through nearby
yards, leaving their car parked on the street. The
police gave chase and arrested the defendant when

---

[2] MCL 750.227b; MSA 28.424(2).

they found him hiding in some bushes. A second man was arrested half a block away, about an hour later. Latent fingerprints on the garbage bag were found to belong to both defendants. Two witnesses from the store positively identified the defendant as the robber. One of them, the assistant night manager, had known the defendant six or seven years earlier, having been a former classmate.

The defendant was jointly tried with his codefendant, the alleged driver of the getaway car.

On the morning of the first day of the trial, both the defendant and his codefendant requested new counsel, but not separate counsel, on the grounds that they lacked faith in their assigned counsel and believed that he was unprepared to represent them. After hearing from each of the defendants as to the reason for their request, and appointed counsel's response, the trial court denied the motion.

Defense counsel then presented two motions on behalf of both defendants. The first requested exclusion from evidence of the defendants' prior convictions for impeachment purposes in the event the defendants chose to testify, and, in any case, as substantive similar-acts evidence. The second motion requested separate trials. Both motions were denied.

As the trial progressed, additional disputes arose between the defendant Wakeford and assigned counsel as to the proper cross-examination of the prosecution witnesses. On the fourth day of trial, after at least two more requests by Wakeford for a different attorney were made and denied, the defendant decided that if he could not have a different attorney he would represent himself. Thereafter, Wakeford called his own witnesses, conducted his own cross-examinations, and gave his own

closing argument. Codefendant Ammons continued to be represented by assigned counsel. Neither of the defendants testified, although witnesses for the defense were called by assigned counsel on behalf of the codefendant and by Wakeford for himself.

The jury found the codefendant not guilty, but convicted Wakeford of both armed robbery charges and the felony-firearm charge. He was subsequently sentenced to a prison term of 40 to 60 years for the two armed robbery convictions and an additional 2 years for the felony-firearm conviction.

Wakeford's convictions were affirmed by the Court of Appeals. 94 Mich App 249; 288 NW2d 381 (1979).

Pursuant to defendant's letter request under Administrative Order 1977-4, 400 Mich lxvii, this Court ordered the appointment of counsel to prepare an application for leave to appeal. Upon consideration of the delayed application, we granted leave to appeal. 412 Mich 870 (1981).

We take up the defendant's assignments of error, *seriatim*.

## I

The Double Jeopardy Clauses of the Michigan[3] and the United States[4] Constitutions protect against both multiple prosecutions and multiple punishments for the "same offense".[5] Under Michi-

---

[3] Const 1963, art 1, § 15.

[4] US Const, Ams V, XIV.

[5] "[T]he Fifth Amendment guarantee against double jeopardy * * * has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Footnotes omitted.) *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

gan law, the defendant's two sentences for his armed robbery convictions constitute separate pun-ishments even though the sentences are to be served concurrently.[6] Therefore, the critical inquiry is whether the punishments were imposed for the "same offense", a phrase "deceptively simple in appearance but virtually kaleidoscopic in application". *Whalen v United States,* 445 US 684, 700; 100 S Ct 1432; 63 L Ed 2d 715 (1980) (Rehnquist, J., *dissenting*).

It is important to recognize at the outset that the term "same offense" has a different and broader meaning in a case involving a subsequent prosecution than it does here, where multiple punishments were imposed during a single trial. Compare *People v White,* 390 Mich 245; 212 NW2d 222 (1973), adopting the "same transaction" test for subsequent prosecutions, with *People v Carter,* 415 Mich 558; 330 NW2d 314 (1982), and *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), in which multiple punishments imposed at a single trial were upheld. See also *Whalen, supra,* p 700 (Rehnquist, J., *dissenting*); *Brown v Ohio,* 432 US 161, 166-167, fn 6; 97 S Ct 2221; 53 L Ed 2d 187 (1977) (dictum).[7]

*Brown v Ohio,* 432 US 161, 165; 97 S Ct 2221; 53 L Ed 2d 187 (1977); *People v Wilder,* 411 Mich 328, 355; 308 NW2d 112 (1981) (RYAN, J., concurring).

[6] *People v Stewart (On Rehearing),* 400 Mich 540, 549-550; 256 NW2d 31 (1977); *People v Martin,* 398 Mich 303, 310-311; 247 NW2d 303 (1976); *People v Jankowski,* 408 Mich 79, 95-96; 289 NW2d 674 (1980).

[7] *Cf. Missouri v Hunter,* 459 US 359, 369; 103 S Ct 673; 74 L Ed 2d 535, 544 (1983) (Marshall, J., *dissenting*):

"For the reasons stated below, I do not believe that the phrase 'the same offense' should be interpreted to mean one thing for purposes of the prohibition against multiple prosecutions and something else for purposes of the prohibition against multiple punishment."

Justice Marshall's viewpoint is inconsistent with the "same transaction" test for multiple prosecutions proposed in *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (Brennan, J., with

Because this is not a "subsequent prosecution"
case, the factually analogous case of *Ashe v Swenson*, 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469
(1970), is not dispositive. In *Ashe,* the defendant
was charged with the armed robbery of one of six
participants in a poker game. The sole issue at the
first trial, which ended in acquittal, was identity.
A subsequent prosecution for the armed robbery of
a second poker player was held to be barred by the
Double Jeopardy Clause on the theory of collateral
estoppel. Since the first jury refused to find beyond
a reasonable doubt that the defendant was one of
the robbers, the state was barred from relitigating
that same issue before a second jury. Here, we
must look to cases construing the "multiple punishment" branch of the Double Jeopardy Clause in
answering the question unanswered by the United
States Supreme Court in *Ashe.*[8]

### A

The defendant's claim that multiple punishment
in this case constitutes "legal" double jeopardy[9] is

Douglas and Marshall, JJ., *concurring)* and adopted by this Court in
*People v White, supra,* unless one is prepared to reach the startling
conclusion that only a single conviction may result from the several
distinct crimes that may be committed during a single criminal
"transaction". We have never held, as a matter of state or federal
constitutional law, that only one conviction may result, for example,
from the rape, robbery, kidnapping, and murder of victim A, or from
the murders of victims B, C and D, even if the charges must be
brought in a single trial under the "same transaction" test. Such a
rule could be said to permit criminals to engage in an extended crime
"spree", knowing that at most only one conviction could result and
that any crime other than the most serious was "free" of any
possibility of conviction. It would offend rationality, as well as our
sense of equal justice, to require treatment of one defendant committing a single crime identically with another defendant committing
four counts of the same crime in the "same transaction".

[8] "The question is not whether Missouri could validly charge the
petitioner with six separate offenses for the robbery of the six poker
players. It is not whether he could have received a total of six
punishments if he had been convicted in a single trial of robbing the
six victims." *Ashe, supra,* p 446.

[9] The expression "legal" double jeopardy is used here to distinguish

appropriately resolved by ascertaining and enforcing the intent of the Legislature. *Missouri v Hunter,* 459 US 359, 367; 103 S Ct 673; 74 L Ed 2d 535, 542-543 (1983); *Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958); *Whalen v United States, supra,* pp 688-689; *Albernaz v United States,* 450 US 333, 344; 101 S Ct 1137; 67 L Ed 2d 275 (1981); *Wayne County Prosecutor, supra,* pp 392, 402; *People v Carter, supra,* p 577, fn 17; see also *People v Jankowski,* 408 Mich 79, 85; 289 NW2d 674 (1980); *People v Wilder,* 411 Mich 328, 356-358; 308 NW2d 112 (1981) (RYAN, J., *concurring*).

One often-utilized method of determining the intent of the Legislature is to apply the so-called *Blockburger* test.[10] *Wilder, supra,* pp 342-343, and fn 6. In *Gore, supra,* the Court applied *Blockburger* and held that three convictions could result from a single sale of narcotics, because three separate statutes proscribing essentially the same offense evinced a legislative intent to multiply punish a single illegal sale of narcotics. However, that test is helpful only in determining legislative intent to multiply punish when the defendant's

---

it, for purposes of explanation, from "factual" double jeopardy discussed in part B. "Legal" double jeopardy is recognized under both the federal and state constitutions, while the notion of "factual" double jeopardy, while not denominated as such, is a concept created by this Court in construing the Michigan Constitution in *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976). "Legal" double jeopardy ascertains whether two offenses are the "same offense". "Factual" double jeopardy determines whether, despite the violation of two separate and distinct statutes, the Legislature nevertheless intended that only a single conviction result. As discussed in part B, in the final analysis, the doctrines are not really separate or distinct, since both ultimately require ascertaining and enforcing the intent of the Legislature.

[10] "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).

conduct violates two *different* statutes. Since the *Blockburger* test is merely a rule of statutory construction, it should not be applied where it is not helpful. *Albernaz, supra,* p 340.

The cases more precisely on point in analyzing a multiple-punishment double jeopardy claim are the so-called "unit of prosecution" cases, in which the courts have determined what constitutes a single crime or offense under a particular statute. In *Bell v United States,* 349 US 81; 75 S Ct 620; 99 L Ed 905 (1955), the defendant pleaded guilty to two counts of transporting women across state lines for immoral purposes. Both counts concerned transporting two women on the same trip in the same car. Entirely on the basis of an analysis of legislative intent and not on a double jeopardy analysis, the Court held that the defendant's convictions of both counts could not stand. A similar issue was addressed in the English common-law case of *Crepps v Durden,* 2 Cowp 640; 98 Eng Rep 1283 (KB, 1777), as reported in *Whalen, supra,* 445 US 704 (Rehnquist, J., *dissenting),* in which it was held that the sale of four loaves of bread on Sunday, in violation of a statute, was a single offense rather than four offenses. In our own case of *People v Willie Johnson,* 406 Mich 320, 330; 279 NW2d 534 (1979), we held that the gravamen of the criminal sexual conduct statute was sexual penetration, accomplished under any of the enumerated aggravating circumstances, and that the Legislature intended that a single conviction should result from a single sexual penetration, even if accompanied by more than one of the aggravating circumstances enumerated in the statute.

Under the United States Constitution, legislative intent is the beginning and end of the inquiry as

to whether multiple punishments constitute double jeopardy. The Court's analysis in *Gore, supra,* pp 392-393, demonstrates that the Legislature's authority to define a single criminal "act" or "offense" is not diminished by the Double Jeopardy Clause. The clause is a limitation on the prosecutor and the courts, not the Legislature. The clause does not declare "that any particular criminal transaction is made up of a determinable number of constitutional atoms that the legislature cannot further subdivide into separate offenses". *Whalen, supra,* p 701 (Rehnquist, J., *dissenting);* see Westen & Drubel, *Toward a General Theory of Double Jeopardy,* 1978 S Ct Rev 81, 113; Note, *Twice in Jeopardy,* 75 Yale L J 262, 311-313 (1965).

The point of departure for our analysis of the defendant's double jeopardy claim, then, is the principle that the intent of the Legislature controls. Our application of that principle to the armed robbery statute in the context of this case will be deferred to part C.

**B**

The defendant's claim on appeal[11] that punishment for two armed robbery counts in this case constitutes "factual" double jeopardy arises, no doubt, because of this Court's interpretation of Const 1963, art 1, § 15, in *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), and *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977).[12] The federal Double Jeopardy Clause

---

[11] The defendant made no double jeopardy claim through counsel or *pro se,* explicitly or otherwise, at the trial level. The issue was first raised in the Court of Appeals.

[12] *People v Cook,* 236 Mich 333; 210 NW 296 (1926), does not adequately address the factual double jeopardy doctrine because it is a subsequent prosecution case which was implicitly superseded by the "same transaction" test of *White, supra.* Even in *Cook,* p 336, the

has no such interpretative gloss. Under the federal
constitution, if the *Blockburger* test is satisfied, it
is conclusively presumed that multiple punish-
ments were intended. *Albernaz, supra; Gore, su-
pra; Blockburger v United States,* 284 US 299; 52
S Ct 180; 76 L Ed 306 (1932); but see *Illinois v
Vitale,* 447 US 410; 100 S Ct 2260; 65 L Ed 2d 228
(1980), suggesting that a factually based analysis
might be appropriate in determining whether a
subsequent prosecution was barred by the Double
Jeopardy Clause. Only if two crimes are the same
under the *Blockburger* test is it necessary to con-
sult other indicia of legislative intent.

In *Martin, supra,* p 308, and *Stewart, supra,* p
548, we held that even though possession and
delivery of the same heroin were "distinct" and
"separate" offenses, only one conviction and pun-
ishment could result. While the point was not
made explicit in those cases, subsequent decisions
by this Court reveal that claims of "factual" dou-
ble jeopardy, like legal double jeopardy, are to be
resolved by ascertaining the intent of the Legisla-
ture. In *Wayne County Prosecutor, supra,* 406
Mich 399-402, it was a factually "necessary prereq-
uisite" to convict the defendant of the particular
felony in order to convict of a felony-firearm
charge.[13] The felony conviction was the *sine qua*

Court indicated that its decision was ultimately based on legislative
intent:
  "The whole statute makes a single crime and its clear purpose and
intent is to forbid and punish every conceivable act which has to do
with intoxicating liquor."

[13] Conviction of the felony in order to convict of felony-firearm was
a "necessary prerequisite" only in a logical or analytical sense. A
felony-firearm conviction may stand alone, *People v Lewis,* 415 Mich
443; 330 NW2d 16 (1982), if the factfinder, for whatever reason,
wishes to acquit the defendant of the underlying felony, just as other
apparently illogical or inconsistent criminal verdicts may be sus-
tained. *People v Vaughn,* 409 Mich 463; 295 NW2d 354 (1980).
  Ordinarily, if two crimes are not the "same offense" under the
*Blockburger* analysis, that is a sufficiently clear expression of legisla-

*non* for the felony-firearm conviction. Compare *Martin*, p 309. But in *Wayne County Prosecutor*, p 399, we distinguished *Stewart* and *Martin* on the basis of the clearly expressed legislative intent to authorize "separate convictions and cumulative punishments based on one occurrence". Similarly, in *Carter*, 415 Mich 582-589, this Court affirmed convictions of conspiracy to commit unarmed robbery and extortion, as well as aiding and abetting the commission of both substantive offenses. Finding that the offenses were "not of the same class or category" and did not "reflect a common statutory purpose", the Court refused to find "factual double jeopardy", despite the fact that much of the evidence against the defendant performed "double duty".[14]

Viewed in this light, defendant's claim of factual double jeopardy depends not upon whether most or all of the same evidence was utilized to convict of both counts of armed robbery, but whether the legislative intent or statutory purpose was that

---

tive intent to permit the imposition of multiple punishment. But, in *Stewart* and *Martin*, we recognized that the separate crimes of possession and sale of heroin are so similar and so often occur in the same transaction that the Legislature must have intended the more severe penalty for sale to be the sole and sufficient punishment for possession incident to a sale of narcotics. The Legislature may choose to impose multiple punishment for possession and sale by appropriately amending the statutes.

[14] The *Carter* case illustrates that a claim of factual double jeopardy is difficult to sustain. When two offenses are the "same offense" under the doctrine of legal double jeopardy, a presumption against multiple punishment arises that can only be rebutted by a "clearly expressed * * * [legislative] intent to authorize multiple convictions and cumulative punishments". *Wayne County Prosecutor, supra,* p 402; *Wilder, supra,* pp 364-365 (RYAN, J., *concurring*); *Missouri v Hunter, supra*. When two offenses are separate and distinct, a similar but opposite presumption in favor of multiple punishment may be drawn. *Albernaz, supra,* pp 340-343. While that presumption may be rebutted, *e.g., Martin, supra,* and *Stewart, supra,* the legislative intent to authorize only a single conviction and punishment should likewise be "clearly expressed".

two convictions should result. To the extent certain language in *Martin, Stewart,* and *Jankowski* suggests that the critical test is whether the defendant committed "one single wrongful act", we specifically disavow that test. It is up to the Legislature, not this Court, to determine what constitutes a single offense. The so-called "factual double jeopardy" doctrine simply asks whether the Legislature authorized multiple punishment under the circumstances.

## C

The dispositive question is whether the Legislature intended that two convictions might result under MCL 750.529; MSA 28.797 under the circumstances presented in this case. The language of the statute[15] consistently refers to the robbery victim in the singular; *viz.,* "his person", "his presence", "the person so assaulted". This strongly suggests that the gravamen of the offense is the armed assault on a person when combined with the taking of money or property. The primary purpose of the statute is the protection of persons; the protection of property afforded by the statute is not significantly greater than that afforded by the statute prohibiting larceny from the person of another, a felony punishable by a ten-year maximum penalty. MCL 750.357; MSA 28.589.

The defendant argues that the taking of prop-

---

[15] "Any person who shall assault another, and shall feloniously rob, steal and take from *his person,* or in *his presence,* any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead *the person so assaulted* to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison, for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while committing an armed robbery as defined in this section, the sentence shall be not less than 2 years' imprisonment in the state prison." (Emphasis added.)

erty from a single owner,[16] the market, at the same time and place constitutes but one offense, citing *People v Williams*, 98 Mich App 510; 296 NW2d 293 (1980), *lv den* 411 Mich 897 (1981); Anno: *Single or Separate Larceny Predicated Upon Stealing Property From Different Owners at the Same Time*, 37 ALR3d 1407. In *People v Johnson*, 81 Mich 573; 45 NW 1119 (1890), this Court rejected the defendant's claim that stealing several items belonging to different owners from separate floors of a granary constituted separate larcenies that could not be charged in one general information. The majority rule appears to be that the theft of several items at the same time and place constitutes a single larceny. See Anno: 37 ALR3d 1407, 1410. However, a taking that constitutes a "single offense" under the larceny statute may give rise to multiple convictions under the armed robbery statute. The appropriate "unit of prosecution" for larceny is the taking at a single time and place without regard to the number of items taken; the appropriate "unit of prosecution" for armed robbery is the person assaulted and robbed.

If the appropriate units of prosecution for armed robbery are the number of persons assaulted and robbed, it does not matter that, had the victims been absent, only one larceny conviction could have been obtained, despite a taking from two different places within a store. Nor does this approach allow the prosecutor to multiply the number of armed robberies by charging a separate

---

[16] It is well settled in this jurisdiction that mere custody or control by the victim of the property stolen by the thief is sufficient to support a charge of larceny or robbery. *People v Gould*, 384 Mich 71, 80; 179 NW2d 617 (1970); *People v Cabassa*, 249 Mich 543; 229 NW 442 (1930); *Durand v People*, 47 Mich 332; 11 NW 184 (1882). Ownership of the stolen property by the victim is not required.

offense for each item of property taken from a single person. *Cf. People v Leverette,* 112 Mich App 142, 148; 315 NW2d 876 (1982). If the first victim's cash register in this case contained ten $100 bills, the appropriate charge is but one armed robbery arising out of that single assault.

Our decision is also supported by the reasons discussed in fn 7, which suggest that some additional punishment may be warranted for each additional victim of an armed assault. We do not ascribe to the Legislature the intent to inform a criminal that as long as he is robbing one store clerk, or bank teller, or bus passenger, he is free to take money from the rest of the persons present without facing the prospect of additional robbery convictions. Our legislatively expressed state policy requiring concurrent rather than consecutive sentencing in the absence of specific legislative authorization[17] avoids the principal harshness that might otherwise result from multiple convictions. Compare *Sweek v People,* 85 Colo 479; 277 P 1 (1929), suggesting that under the Colorado consecutive sentencing scheme, multiple larceny convictions for each item stolen might allow the defendant to be sentenced to the penitentiary for life. Our concurrent sentencing scheme supports the view that the Legislature intended to permit multiple armed robbery convictions under the circumstances of this case.

Finally, we reject the defendant's attempt to invoke the rule of lenity in construing this criminal statute. See *Bell v United States, supra.* The rule of lenity properly applies only in the circumstances of an ambiguity, or in the absence of any

[17] *Browning v Michigan Dep't of Corrections,* 385 Mich 179, 189; 188 NW2d 552 (1971); *People v Gallagher,* 404 Mich 429, 439-440; 273 NW2d 440 (1979).

firm indication of legislative intent.[18] *Albernaz,
supra,* pp 342-343. Since we find adequate support
in the language of the statute and elsewhere for
our construction of the armed robbery statute, we
decline to apply the rule of lenity.

For the foregoing reasons, we reject defendant's
claim that his two convictions of armed robbery
constitute double jeopardy.

## II

The defendant argues that the trial court erred
in denying his motion to suppress evidence of all
previous felony convictions if he testified. The
defendant concedes that the trial judge recognized
his discretion to admit or exclude the evidence
under *People v Jackson,* 391 Mich 323; 217 NW2d
22 (1974), and exercised it. However, he argues
that the trial judge abused that discretion by using
the similarity between the prior convictions and
the charged offense as a factor in *favor* of admissi-
bility. This would have been error under *Jackson,*
as we explicitly declared in *People v Baldwin,* 405
Mich 550; 275 NW2d 253 (1979), decided subse-
quent to the trial in this case.

It was agreed at the time the motion was made
that the defendant's prior record included convic-
tions of attempted breaking and entering of a
business place in 1973, unarmed robbery in 1974,
and assault with intent to rob in 1974. After
considering the matter, the trial court ruled that
the attempted breaking and entering conviction
could not be admitted, but that the convictions of

---

[18] Or, as in *Wilder, supra,* where the rebuttable presumption of
single punishment arises under the Double Jeopardy Clause, a "clear
legislative intent" is required to impose multiple punishment. *Wilder,
supra,* 411 Mich 364 (RYAN, J., *concurring).*

unarmed robbery and assault with intent to rob
were admissible.

We agree with the Court of Appeals that the
trial judge's ruling on the motion was "in some
respects confusing".[19] It is possible that the trial
judge may have been using similarity as a factor
in favor of admissibility, or he may have been
excluding the conviction that was more remote in
time. We think, upon a careful examination of the
record, that the latter is more likely. In all events,

---

[19] 94 Mich App 251.

The following is only a small portion of the extended discussion and
ruling on the issue of the admissibility of evidence of the prior
convictions.

"[Defense Counsel]: [A]s I point out, because of their youthful age,
and the time of the prior convictions, we believe that the prejudice of
these prior convictions will outweigh any probative value of such
evidence to impeach either defendants' credibility.

* * *

"The Court: Thank you.

"Both of these matters,. namely, evidence of similar acts, and
evidence of prior convictions, when a motion is offered to exclude
either, require that the court, under People v Jackson, in the case of
prior convictions, People v Penn [71 Mich App 517; 248 NW2d 602
(1976)] must exercise its discretion. Each of these forms the basis of
the ruling, a discretionary ruling on the part of the court.

"The records themselves have been summarized. We have Mr.
Wakeford, 22 at the present time. [The codefendant], 22. Each of them
apparently 18 at the time of the attempted breaking and entering. So,
as to prior convictions [in the codefendant's] case, I would eliminate
the breaking and entering, that being remote in time, when he was
youthful, and the prison break, also, as not bearing on anything here.

"However, I will allow the assault with intent to rob, either on
prior conviction, or on similar acts.

"As to Mr. Wakeford, the same would apply to attempted breaking
and entering. We are left then with the unarmed robbery and the
assault with intent to rob being armed. The exercise of discretion, I
will permit those two offenses only at the attempted breaking and
entering, no reference to another robbery or that apparently being a
merged defense, or the assault with intent to rob, being a lesser
included offense to which either plead or found guilty. Those two
matters may be introduced, but not the other two.

"[Defense Counsel]: With reference to Mr. Wakeford.

"The Court: The unarmed robbery and the assault with intent to
rob may be used. Prior convictions or similar acts. But not attempted
breaking and entering, and not any reference to an armed robbery."

we do not infer an affirmative misapplication of the principles of *Jackson, supra,* from such an ambiguous record. If a misapplication of *Jackson* could be inferred from a silent or ambiguous record, few pre-*Baldwin* trials could withstand appellate scrutiny. Our amendment of MRE 609(a)(2), effective May 14, 1980, to require an on-the-record articulation of the factors considered is also of no assistance to this defendant, whose trial predated even the effective date of the Michigan Rules of Evidence. On the basis of the precedent and guidance available to the learned trial judge in this case in November of 1977, we decline to find an abuse of discretion.

What is more important is that this record is devoid of any indication that the defendant was unfairly prejudiced by the court's ruling.

Unaided by our later *Baldwin* decision, and guided only by *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967) and *Jackson, supra,* the trial judge was obligated to exercise his discretion whether to admit or exclude the prior convictions by reference to certain criteria. Among them are:

—The nature of the prior offense, whether similar or dissimilar to the offense charged, similarity standing as a factor weighing against admissibility, but not conclusive of the matter;

—Recency of the prior offense as probative of the defendant's veracity at the time of trial, should he elect to testify;

—The importance to the truth-seeking process, not merely the prospects for acquittal, of obtaining the defendant's version of the events in question. The notion here is that otherwise presumptively admissible prior convictions should be excluded if the price of a ruling of admissibility is to keep the

defendant from the witness stand *when the testimony he would offer would be central to the matters seriously controverted.*

We note that at least one federal circuit court of appeals now requires an offer of proof in order to preserve for appeal the very issue before us.[20] While we do not today make such a procedure mandatory, it obviously has much to commend it.

In the absence of some indication as to what the defendant's testimony would have been, we can only speculate as to how the trial would have been different and the "decisional process" affected, *Jackson, supra,* had the defendant testified. We decline to predicate reversal on such speculation, particularly since it was well within the defendant's ability to preclude such speculation by making an offer of proof and a separate record. See MRE 103.

Issues of the defendant's intent and credibility were not central to the case. *Cf. Gordon v United States,* 127 US App DC 343, 347; 383 F2d 936 (1967). The defense theory appears to have been misidentification and lack of proof beyond a reasonable doubt. No alibi defense was ever suggested, either before or after the trial judge's ruling. On appeal, defense counsel suggests that the defendant could have testified that he was not attending school at the time the identifying witness and alleged former classmate testified that

---

[20] "In future cases, to preserve the issue for review, a defendant must at least, by a statement of his attorney: (1) establish on the record that he will in fact take the stand and testify if his challenged prior convictions are excluded; and (2) sufficiently outline the nature of his testimony so that the trial court, and the reviewing court, can do the necessary balancing contemplated in [FRE] 609. The trial court can then articulate its reasons for ruling as it does in each case. In future cases, a defendant who does not make the record contemplated in [FRE] 103 can fairly be said to have abandoned the point". *United States v Cook,* 608 F2d 1175, 1186 (CA 9, 1979) *(en banc),* cert den 444 US 1034 (1980).

they had attended school together. However, in light of the unrebutted evidence introduced by the defendant on that point, see fn 21, as well as the overwhelming evidence of guilt, we agree with the Court of Appeals that the error, if any, was harmless beyond a reasonable doubt.

## III

Finally, we must consider whether the defendant was denied the right to counsel during trial or at sentencing.

## A

The defendant expressed dissatisfaction with the performance of his assigned counsel early and often. At the preliminary examination, the defendant objected so vociferously to his attorney's failure to conduct an extensive cross-examination of a prosecution witness that the examining magistrate ordered the defendant's removal from the courtroom. On the opening day of trial, both defendant and his codefendant asked for the appointment of new counsel on the grounds that their attorney was "unprepared" and they had "no faith" in him. The trial judge allowed the defendants to place their objections on the record before refusing, correctly we think, to grant their motion. On at least two other occasions during trial, the defendant Wakeford requested the appointment of new counsel on the grounds that assigned counsel's performance was inadequate. Finally, the defendant asked for and was granted the opportunity to represent himself.[21]

_____

[21] Predictably, the quality of self-representation was quite poor. The defendant succeeded in recalling the prosecution's star witness, his former classmate, who positively identified the defendant as the robber. Painstaking cross-examination of the witness served only to reinforce his testimony.

In the guise of impeachment, the defendant "succeeded" in intro-

On appeal, it is argued that what was really at issue was the need for separate counsel, not merely dissatisfaction with the trial tactics of appointed counsel. The motion for separate trials is cited as sufficient to alert the trial judge to a conflict of interest and to require him, *sua sponte*, to appoint separate counsel. *People v Bentley,* 402 Mich 121; 261 NW2d 716 (1978); *People v Gardner,* 406 Mich 369; 279 NW2d 785 (1979). See also GCR 1963, 785.4(4).

We find no error in the trial court's refusal to grant the motion for separate trials. Case law in this state establishes a strong policy in favor of joint trials. *People v Carroll,* 396 Mich 408, 414; 240 NW2d 722 (1976); *People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976). Joinder is within the discretion of the trial judge. MCL 768.5; MSA 28.1028. We do not find even a theoretical inconsistency between the defenses of the defendant and his codefendant, much less an actual inconsistency sufficient to create an affirmative showing of prejudice. Compare *Hurst, supra.*

While the practice of a single attorney representing more than one defendant in a criminal case is properly in decline, we find no inconsistency in the defendants' theories, much less any antagonism, real or theoretical, sufficient to create an *actual* conflict of interest. *Cuyler v Sullivan,* 446 US 335; 100 S Ct 1708; 64 L Ed 2d 333 (1980). The argument that prejudice to defendant Wakeford resulted from the joint trial must be rejected.

ducing as an exhibit a junior high school yearbook with pictures of the witness and the defendant on the *same page.* The purpose of this "impeachment" was evidently to prove that they were classmates during 1969-1970, not 1970-1971.

The defendant's attempt at closing argument emphasized several times not only that he had failed to testify, but that he had not done so because of some "things" in his past that he "would rather not have brought out".

The theory on which the motion for severance was based was that the codefendant would be prejudiced by the strength of the case against Mr. Wakeford, not vice versa.[22]

Nothing in this record reflects any strategy, examination, or argument by counsel on behalf of the codefendant that harmed defendant Wakeford in any manner. The defendant has failed to demonstrate the actual conflict of interest necessary to establish the denial of the right to counsel. *Cuyler, supra.* The standard is not whether the defendant might have preferred separate counsel, or whether in hindsight a different attorney might have increased the defendant's chances of gaining an acquittal. The standard is whether the joint representation created such a conflict that it denied the defendant his right to counsel and a fair trial. We

---

[22] *"[Defense Counsel]:* Well, your Honor, they're arrested at separate times; that there are no eyewitnesses as to one defendant as there are to the other; there were separate line-ups. And I believe Mr. Wakeford was identified in one set of line-ups. [The codefendant] was not. And it is—and from [the codefendant's] point of view, since there is no direct evidence, but merely circumstantial evidence against him, and there's some direct evidence against Mr. Wakeford from the testimony offered and given in the preliminary examination, that the jury is going to be prejudiced by the fact that [the codefendant] is on trial with Mr. Wakeford because there is some direct evidence as to Mr. Wakeford. There is a witness who's going to testify and has testified that he can clearly identify Mr. Wakeford, whereas if they were tried separately, the evidence against [the codefendant] would be clearly circumstantial. That the evidence offered at the preliminary examination was that a bag was found containing the loot of the robbery, or what is claimed to be the loot of the robbery, and his fingerprints on it.

"There is also evidence in the preliminary examination transcript that an unidentified person was driving the getaway car. As far as the fingerprint being on the plastic trash bag that was found to contain the purported loot, that could have been placed on at any time, could have been found in an alley with his· fingerprint on it, and later used by whomever perpetrated the robbery.

"So the evidence against [the codefendant] is underwhelming and circumstantial or, perhaps, circumstantial and underwhelming, and if he's tried with Mr. Wakeford, then it's going to—if I can use the phrase—the direct evidence that has already been presented at the preliminary examination is going to tend to rub off on him."

find none. We cannot fault the trial judge's handling of the motion for severance or the motions for new counsel, especially since the trial in this case took place in November of 1977, before this Court's opinions in *Bentley, supra, Gardner, supra,* or the adoption and promulgation of GCR 1963, 785.4(4).

Since the denial of the motion for new counsel was proper, defendant's decision to represent himself was not coerced. The defendant had an absolute right to represent himself. *Faretta v California,* 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975). We find that the defendant voluntarily exercised that right, waiving his right to appointed counsel at trial. See *People v Anderson,* 398 Mich 361; 247 NW2d 857 (1976).

## B

Our finding that defendant validly waived the assistance of counsel during trial does not necessarily mean that the waiver of counsel at sentencing was equally proper. Sentencing is a critical stage of a criminal prosecution at which the right to counsel attaches. US Const, Ams VI, XIV; *Mempa v Rhay,* 389 US 128; 88 S Ct 254; 19 L Ed 2d 336 (1967); *McConnell v Rhay,* 393 US 2; 89 S Ct 32; 21 L Ed 2d 2 (1968); Const 1963, art 1, §§ 17, 20; *People v Johnson,* 386 Mich 305, 316-317; 192 NW2d 482 (1971) (plurality opinion by WILLIAMS, J.). GCR 1963, 785.4(2), in effect at the time of sentencing in this case,[23] provided:

"If the defendant is not represented by a lawyer the record must affirmatively show on each occasion that the advice of the right to a lawyer at public expense was given and that defendant waived that right."

[23] It is now part of GCR 1963, 785.4(3).

GCR 1963, 785.8 provides as follows:

"Sentencing. Before sentence is imposed the court shall:

"(1) Require the presence of defendant's lawyer unless affirmatively waived by defendant:

\* \* \*

"Provisions of subrule 785.8 are mandatory and failure to comply shall require resentencing."

While it is not clear that the defendant had a lawyer at the time of sentencing,[24] it is evident from the trial transcript,[25] as well as the sentencing transcript,[26] that the defendant was never

[24] It remains an unanswered question whether the defendant must actually have an attorney before a violation of GCR 1963, 785.8 can occur. Nor is it clear what effect, if any, the trial court's appointment of appellate counsel *prior* to Mr. Wakeford's sentencing has on the absence of counsel at sentencing. What is abundantly clear is that the purported waiver in this case was not the intentional relinquishment of a known right. *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938).

[25] *"Mr. Wakeford:* Your Honor, I would like a lawyer to be appointed to me since I do not happen to have one at this time. I would like him to be informed that I would like to see him at the jail before sentencing.

*"The Court:* I will take that matter under advisement.

\* \* \*

"You have asked for the appointment of an attorney. Is that for the purpose of sentence or for the purpose of appeal?

*"Mr. Wakeford:* It is for the purpose of appeal, your Honor.

\* \* \*

*"[Defense Counsel]:* Your Honor, do we understand that I will not be required to advise Mr. Wakeford that at the date of sentencing, December 16th, there will be some other attorney there?

*"The Court:* I do not know if there will be any attorney there for the sentencing, Mr. Wakeford having elected to represent himself, *he is not necessarily entitled to an attorney at the time of sentencing.* He is entitled to an attorney for trial and for appeal, but having represented himself I am presuming that he will represent himself at the time of sentencing." (Emphasis added.)

[26] *"The Court:* Before sentence is passed, is there anything, Mr. Wakeford, you wish to say? I should note for the record that during the course of the trial you elected to proceed on your own and discharged your assigned attorney at that time.

clearly informed of his right to counsel at *sentencing,* and at public expense. In fact, the trial judge's comments can be fairly read as informing the defendant that he did *not* have a separate right to counsel at sentencing. We find no affirmative waiver on this record of the right to counsel. See *People v Carter,* 412 Mich 214; 313 NW2d 896 (1981).

We therefore affirm the defendant's convictions, vacate the sentences, and remand for resentencing.

WILLIAMS, C.J., and BRICKLEY and CAVANAGH, JJ., concurred with RYAN, J.

LEVIN, J. *(for vacation of one conviction).* Patrick Wakeford was convicted of two counts of armed robbery[1] on evidence that he took a grocery store's money from two different cashiers working about 20 feet apart. He was sentenced to two concurrent 40- to 60-year prison terms.[2] I would reverse and vacate one of the armed robbery convictions because only one robbery was committed.

As argued in Part I, the statute (§ 529 of the Penal Code; see fn 1) codifies the common law of

---

*"The Defendant:* Your Honor, pretty much what I have had to say is in my presentence report and I can't say anything else."

[1] "Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison, for life or for any term of years. If any aggravated assault or serious injury is inflicted by any person while committing an armed robbery as defined in this section, the sentence shall be not less than 2 years' imprisonment in the state prison." MCL 750.529; MSA 28.797.

[2] Wakeford was also convicted of one count of possession of a firearm during the commission of a felony. MCL 750.227b; MSA 28.424(2). An additional two-year consecutive sentence was imposed. Wakeford's felony-firearm conviction is not involved in this appeal.

robbery. At common law, robbery was considered to be aggravated theft, not aggravated assault. Thus, a single taking yielded a single robbery conviction, although it may have been aggravated by two assaults. As argued in Part II, the Legislature has not evidenced an intent to alter the common-law rule that robbery is aggravated theft. Absent clear and unmistakable evidence of a legislative intent to impose multiple convictions by redefining robbery as aggravated assault rather than aggravated theft, Wakeford's second robbery conviction should be vacated. And as argued in Part III, even if this Court possesses the power to change this common-law rule, it should only do so after a more thorough analysis of the policies and principles underlying the offense of robbery than has yet been undertaken.[3]

---

[3] Wakeford was convicted of two violations of a single statute, MCL 750.529; MSA 28.797. In double jeopardy challenges brought under the Fifth Amendment in the single-statute context, the intent of the Legislature is generally dispositive. Gore v United States, 357 US 386, 392-393; 78 S Ct 1280; 2 L Ed 2d 1405 (1958) (dicta); United States v Johnson, 612 F2d 843, 847 (CA 4, 1979); Comment, Twice in Jeopardy, 75 Yale L J 262, 302-304 (1965). Although this Court has not considered whether legislative intent is dispositive in a single-statute double jeopardy challenge brought under the Michigan Constitution, the scope of the Double Jeopardy Clause has generally been regarded as the same under both the Michigan and United States Constitutions. People v Alvin Johnson, 396 Mich 424, 430, fn 2; 240 NW2d 729 (1976); In re Ascher, 130 Mich 540, 545; 90 NW 418 (1902). See also People v Wilder, 411 Mich 328, 348, fn 10; 308 NW2d 112 (1981).

This is not to say, though, that the Legislature's power to carve a single episode into a multitude of criminal offenses is unfettered or unlimited. The United States Supreme Court has said that the prohibition against cruel and unusual punishment in the Eighth Amendment limits the power of the Legislature to define crimes and prescribe punishments. Bell v United States, 349 US 81, 82; 75 S Ct 620; 99 L Ed 905 (1955). The Due Process Clause might also preclude the Legislature from declaring, for example, that the theft of a 700-page book constitutes 700 distinct violations of the larceny statute.

Since I am of the opinion that the codification of the common-law offense of robbery yields but a single offense in this case, I need not reach any constitutional questions which might arise under the Due Process Clause or the clause prohibiting cruel and unusual punishment or, indeed, under the Double Jeopardy Clause.

## I

We all agree that the intent of the Legislature marks the point of departure for an analysis of Wakeford's claim.[4] When the Legislature enacted the statutory crime of robbery, it codified the common-law offense of robbery. At common law, robbery was universally viewed as aggravated

[4] Although the majority opinion states, and I agree, that legislative intent is generally controlling in single-statute double jeopardy challenges, it gives scant consideration, in a single paragraph, to those cases. *Ante,* p 107. Three cases are cited, all of which found a legislative intent to create but a single offense. *Bell v United States, supra; Crepps v Durden,* 2 Cowp 640; 98 Eng Rep 1283 (KB, 1777), reported in *Whalen v United States,* 445 US 684, 704; 100 S Ct 1432; 63 L Ed 2d 715 (1980) (Rehnquist, J., *dissenting); People v Willie Johnson,* 406 Mich 320, 330; 279 NW2d 534 (1979).

The remainder of the double jeopardy analysis set forth in the majority opinion is based on cases responding to double jeopardy challenges to multiple convictions under more than one statute. *Ante,* pp 103-111. The law on whether legislative intent is determinative in the two-statute double jeopardy context is not settled. Compare *Missouri v Hunter,* 459 US 359, 368-369; 103 S Ct 673; 74 L Ed 2d 535 (1983), and *Albernaz v United States,* 450 US 333, 344; 101 S Ct 1137; 67 L Ed 2d 275 (1981), with *Jeffers v United States,* 432 US 137; 97 S Ct 2207; 53 L Ed 2d 168 (1977), and *Simpson v United States,* 435 US 6, 12; 98 S Ct 909; 55 L Ed 2d 70 (1978). For Michigan law on this question, compare *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), with *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), and *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977).

I agree with the majority that the rules developed for cases involving multiple punishment of a defendant whose conduct has violated two statutes "should not be applied where [they are] not helpful". *Ante,* p 107. Although the case law in the two-statute double jeopardy context is interesting, it is not controlling in the instant case.

The attempt by the majority to apply two-statute double jeopardy cases in the context of the present single-statute case is particularly troubling with respect to three two-statute cases recently decided by this Court: *People v Martin, supra, People v Stewart, supra,* and *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980). Since the present case differs factually from the two-statute cases of *Martin, Stewart,* and *Jankowski,* this case is not an appropriate one in which to make the sweeping statement that "[t]o the extent certain language in *Martin, Stewart,* and *Jankowski* suggests that the critical test is whether the defendant committed 'one single wrongful act', we specifically disavow that test". *Ante,* p 111. The misapplication in a single-statute setting of the two-statute double jeopardy analysis should not be compounded by altering that analysis.

theft, not aggravated assault. Accordingly, the offender in the one store-two cashier context could only be convicted of a single robbery.

### A

"Underlying the criminal statutes of this state is the common law." *People v McDonald,* 409 Mich 110, 117; 293 NW2d 588 (1980). When confronted with a statute in which an offense has been proscribed in the terms of the common law, courts construe the statute in accordance with the principles developed by the common law on the presumption that the Legislature intended no alteration or innovation in the common law not expressly stated or declared. *People v Schmitt,* 275 Mich 575, 577; 267 NW 741 (1936). See also *Garwols v Bankers Trust Co,* 251 Mich 420, 424-425; 232 NW 239 (1930); *Bandfield v Bandfield,* 117 Mich 80, 82; 75 NW 287 (1898); *Wales v Lyon,* 2 Mich 276, 282 (1851); 8 Michigan Law & Practice, Criminal Law, § 5, pp 92-93.

This Court has said that this rule applies to the codification of the common-law offense of robbery:

" 'Robbery at common law is defined as the felonious taking of money or goods of value from the person of another or in his presence, against his will, by violence or putting him in fear. This definition has been followed by most of the statutes, and even where the language has been varied sufficiently to sustain, by a literal interpretation, a narrower definition of the offense, it has usually been held that it could not be presumed that the legislature intended to change the nature of the crime as understood at common law.' " *People v Covelesky,* 217 Mich 90, 96-97; 185 NW 770 (1921) (quoting 23 RCL 1139).

The Court went on in *Covelesky* to note:

"A well recognized rule for construction of statutes is that when words are adopted having a settled, definite and well-known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is *plainly shown." Id.,* p 100 (emphasis added).

The language of the robbery statute closely parallels the common-law definition of the offense.[5] A legislative intent to redefine the substantive elements of robbery has not been "plainly shown". Absent such a showing, the presumption is that the Legislature did not intend to change the nature or the elements of the common-law offense. And thus it has been said that when the robbery statute was enacted, "[i]t was not the intention of the Legislature to create a new crime". *People v Calvin,* 60 Mich 113, 120; 26 NW 851 (1886). As this Court declared in a case concerning the codified common-law offense of burglary, we construe the statutory offense by ascribing to it common-law content. *People v Young,* 418 Mich 1; 340 NW2d 805 (1983).

## B

The universal view at common law was that robbery was an aggravated form of larceny or theft. 1 Hawkins, Pleas of the Crown (1716-1721), p 95 (robbery is mixed or complicated larceny); 2 East, Pleas of the Crown (1803), p 707 (robbery is a species of aggravated larceny from the person); 23 RCL, Robbery, § 2 ("Robbery may thus be said to be a compound larceny composed of the crime of larceny from the person with the aggravation of force, actual or constructive, used in the taking"). Textbooks published during the past century have continued to state that common-law robbery is

---

[5] Compare fn 1 and first full paragraph of text following fn 11.

larceny or theft aggravated by the use of force.
See, *e.g.*, Clark & Marshall, Crimes (7th ed),
§ 12.09, pp 881-882; LaFave & Scott, Criminal Law,
§ 94, p 692; Perkins, Criminal Law (2d ed), § 2, p
280; Smith & Hogan, Criminal Law (3d ed), p 434;
Cross & Jones, Criminal Law (8th ed), § 11.2, p
215; Williams, Criminal Law, p 791. The courts,
some defining the common-law offense and some
construing a statutory codification of the offense,
have also said that robbery is aggravated theft.[6]
And in *People v Jankowski*, 408 Mich 79, 87-88;
289 NW2d 674 (1980), this Court declared that the
robbery statute incorporated the common-law rule
that robbery is aggravated theft:

"Robbery has long been defined in this jurisdiction to
be nothing more than a 'larceny committed by assault
or putting in fear'. * * * When the taking is accom-
plished by force or assault, *the offense is aggravated to
one of robbery.*" (Emphasis added.)

If Wakeford had taken the store's money from
two different cash registers without placing any-
one in fear, so that the offense was larceny rather
than robbery, he could only have been convicted of
one larceny.[7] The majority opinion recognizes that

---

[6] See, *e.g.*, *Regina v Skivington*, 1 Law Rep 166, 170 (QB, 1968);
*Pierce v State*, 627 P2d 211, 219, fn 12 (Alas App, 1981); *People v
Butler*, 65 Cal 2d 569, 572; 55 Cal Rptr 511; 421 P2d 703 (1967);
*People v Gallegos*, 130 Colo 232, 235; 274 P2d 608 (1954); *United
States v Mann*, 119 F Supp 406, 407 (D DC, 1954); *State v Pokini*, 45
Hawaii 295, 303; 367 P2d 499 (1961); *State v Gardner*, 356 Mo 1015,
1016; 204 SW2d 716 (1947); *State v D'Agostino*, 176 NJ Super 49, 53;
422 A2d 97 (1980); *State v Puga*, 85 NM 204, 205; 510 P2d 1075 (1973);
*People v Fuller*, 77 Misc 2d 747; 354 NYS2d 586 (1974); *State v Smith*,
268 NC 167, 172-173; 150 SE2d 194 (1966); *State v Trujillo*, 7 Or App
236, 238; 489 P2d 977 (1971); *Young v State*, 259 SC 383, 386; 192
SE2d 212 (1972); *Watson v State*, 207 Tenn 581, 584; 341 SW2d 728
(1960); *Holland v State*, 110 Tex Crim App 384, 389; 10 SW2d 561
(1928).

[7] Larceny of several articles at the same time belonging to the same
person has generally been held to constitute one offense. See, *e.g.*,

the theft of several items at the same time and place constitutes a single larceny.[8] If an offender who takes a store's money from two cash registers can only be convicted of one larceny, that he has "aggravated [the offense] to one of robbery" by placing two cashiers in fear does not multiply the number of offenses committed or justify multiple convictions and punishments.[9]

An assault aggravates theft to robbery. That does not imply, however, that the number of persons assaulted determines the number of robberies

*State v Clark,* 32 Ark 231, 236 (1877); *State v Augustine,* 29 La Ann 119 (1877); *State v McCormack,* 8 Or 236 (1880); *State v Williams,* 29 Tenn 101 (1849); *Quitzow v State,* 1 Tex Crim App 47 (1876); *Holly v Commonwealth,* 113 Va 769; 75 SE 88 (1912). See also 52A CJS, Larceny, § 53, p 479; 50 Am Jur 2d, Larceny, § 3, p 154. See fn 8.

[8] *Ante,* p 112. See *People v Henry Johnson,* 81 Mich 573; 45 NW 1119 (1890).

"The overwhelming majority of jurisdictions follow generally the so-called 'single larceny doctrine'; that is, that the taking of property belonging to different owners at the same time and place constitutes but one larceny." Anno: *Single or Separate Larceny Predicated Upon Stealing Property From Different Owners at the Same Time,* 37 ALR3d 1407, 1409. See fn 33.

[9] This Court in another context has rejected the notion that the presence of aggravating circumstances can increase the number of crimes committed. In *People v Willie Johnson,* 406 Mich 320, 331; 279 NW2d 534 (1979), the defendant was convicted of four counts of first-degree criminal sexual conduct on evidence that he had engaged in sexual penetration with another person under four of the seven aggravating circumstances enumerated in the statute. This Court concluded that the Legislature intended that a single conviction should result from a single sexual penetration, even if accompanied by more than one of the aggravating circumstances enumerated in the statute:

"The fact that a sexual penetration happens to be accompanied by more than one of the aggravating circumstances enumerated in the statute may well ease the burden upon the prosecution in attaining a conviction under MCL 750.520b; MSA 28.788(2), but it may give rise to only one criminal charge for purposes of trial, conviction, and sentencing."

While the aggravating circumstance that two persons were placed in fear at the time of the theft may ease the burden upon the prosecution in attaining a robbery conviction, it may give rise to only one charge of robbery for purposes of trial, conviction, and sentencing.

which have been committed. Assume, for example, that a robber enters a bank in which five employees are working; each employee knows how to open the vault. While brandishing a weapon, the robber orders all five employees to move to the vault and open it for him; after one of the employees opens the vault, the robber takes the bank's money and flees. Can it truly be said, as the majority opinion implies, that the robber has committed five robberies because the theft was accompanied by five assaults? The proper approach is to adhere to the common-law rule; the assaults aggravate the taking from theft to robbery, but as an aggravating circumstance they do not multiply the offense.

Assume five guards are transporting a painting when they are surprised by armed men and forced to surrender the painting. Does the taking of the painting constitute five robberies because five persons have been assaulted although only one painting was taken? Should the result change if each guard were carrying a separate painting?

Assume in the instant case that after assaulting the two cashiers by announcing a robbery and brandishing a gun, Wakeford had bypassed the cash registers and taken groceries instead. Would he have committed one or two robberies? Would the majority reach a different result in this case if Wakeford, after placing the two cashiers in fear, had taken money from a vault or a counting table instead of from two cash registers?

Assume property in a mansion is taken. Does the number of robberies depend on the number of persons in the home (e.g., the owner, his family, the servants) who are forced to accompany the robber through the mansion to open the locked jewelry, silver, fur, and wine storage rooms?

Would the result differ if the master, his family, and the servants did not accompany the robber, but rather surrendered the keys at the entrance-way of the mansion and were then locked in a room, with the robber himself then proceeding to open the locked jewelry, silver, fur, and wine storage rooms?

The "in his presence" (see fn 1 and first full paragraph of text following fn 11) element of the robbery offense is satisfied when property is taken from the owner or anyone in custody and control of the property *(People v Cabassa,* 249 Mich 543, 546; 229 NW 442 [1930]) by putting any such person in fear or subjecting him to violence. Once that element is satisfied, it is satisfied however many times or ways in which it is satisfied; the offense is not multiplied into more than one offense because the "in his presence" element is multifariously satisfied by taking more than one item of property or by taking such property from more than one location that is in the presence of the owner or other persons in custody and control of the property.

## II

The majority opinion concludes, without considering the common-law rule that robbery is aggravated theft, that although the appropriate "unit of prosecution" for larceny is the taking of property, "the appropriate 'unit of prosecution' for armed robbery is the person assaulted and robbed".[10] Thus, the opinion asserts in effect that the Legislature intended robbery to be viewed as aggravated assault rather than as aggravated theft.

The evidence cited by the majority, though, does

---

[10] *Ante,* p 112.

not support the conclusion that the Legislature intended to change the comon-law rule that robbery is aggravated theft, not aggravated assault. Absent clear and unmistakable evidence that the Legislature intended to depart from the common-law rule, Wakeford's second robbery conviction should be vacated.

### A

The majority opinion finds evidence of legislative intent in the language of the statute. Three phrases in particular ("his person", "his presence", and "the person so assaulted") are said to "strongly suggest[ ] that the gravamen of the offense is the armed assault on a person when combined with the taking of money or property".[11] Yet this is but a truism, for nobody would deny that the offense of robbery is, and always has been, characterized by two distinct components: an "assault" component and a "taking" component. The cited phrases simply establish "assault" as a component of the crime of robbery. The phrases do not, however, suggest that the "assault" and "taking" components are anything other than equal in importance, or that an offender who commits two "assaults" should be convicted of two robberies although he has committed only a single "taking" of the owner's money.

Robbery at common law was defined as "a felonious taking of money or goods, to any value, *from the person of another, or in his presence,* against his will, by violence or *putting him in fear"* (emphasis added). 2 East, Pleas of the Crown (1803), p 707. See also *People v Covelesky, supra,* p 96 (quoting 23 RCL 1139). Thus, statutory phrases like "his person", "his presence", and "the person

[11] *Ante,* p 111.

so assaulted" were not new to the law of robbery; quite the contrary, these phrases (or their equivalents) were taken from the common-law definition of the offense. Although these phrases defined elements of the common-law offense, the common law nevertheless deemed robbery to be aggravated theft, not aggravated assault. The use of the same language in the robbery statute, then, suggests that the Legislature intended to codify the common law of robbery, including the established rule that robbery is aggravated theft. Clearly the use of the common-law language does not support the conclusion that the Legislature intended to redefine the offense.

### B

The majority makes two further arguments in support of its view of the legislative intent underlying the robbery statute. First, it is argued that "[t]he primary purpose of the statute is the protection of persons".[12] Second, it is claimed that because "[o]ur legislatively expressed state policy requiring concurrent rather than consecutive sentencing * * * avoids the principal harshness that might otherwise result from multiple convictions", the concurrent sentencing scheme "supports the view that the Legislature intended to permit multiple armed robbery convictions under the circumstances of this case".[13]

To be sure, the protection of persons is *one of* the purposes of the robbery statute. So, too, the protection of persons was one of the purposes of the common law in defining the offense of robbery; nevertheless, the offense was aggravated theft, not aggravated assault. The protection of persons provided by the robbery statute, which continues the

---

[12] *Ante,* p 111.
[13] *Ante,* p 113.

protection of persons provided by the common law, does not suggest that the Legislature intended to depart from the common-law rule that robbery is aggravated theft, not aggravated assault.

The majority supports its conclusion that the primary purpose of the robbery statute is the protection of persons with the assertion that "[t]he protection of property afforded by the statute is not significantly greater than that afforded by the statute prohibiting larceny from the person of another, a felony punishable by a ten-year maximum penalty. MCL 750.357; MSA 28.589."[14] The majority's argument and conclusion assume the inapplicability of other statutory provisions designed to protect persons. Although an offender who steals a store's money from two cashiers has only committed one robbery, he is arguably subject to prosecution for felonious assault,[15] or assault with intent to rob while armed[16] because of the assault on the other cashier.[17]

The protection of persons provided by the armed robbery statute is not greater than that provided by the statute prohibiting assault with intent to rob while armed; both felonies carry the identical maximum penalty of imprisonment for life or for any term of years.[18] The provisions of the assault

[14] *Ante,* p 111.

[15] MCL 750.82; MSA 28.277. Felonious assault is a felony punishable by a four-year maximum penalty. MCL 750.503; MSA 28.771.

[16] MCL 750.89; MSA 28.284.

[17] I express no opinion whether on this record Wakeford could have been convicted of either assault with intent to rob while armed or felonious assault upon the second cashier. The point is simply that these statutory provisions, if held applicable to a one store-two cashier holdup, would negate the contention that two robbery convictions are essential to provide protection of the persons of both assaulted cashiers.

[18] Compare MCL 750.529; MSA 28.797, with MCL 750.89; MSA 28.284.

The added protection of property provided by the armed robbery

with intent to rob while armed and felonious assault statutes, if held to be applicable, may also allay any concern that a finding of only one robbery in the one store-two cashier context would inform an offender that as long as he is robbing one store clerk or bank teller, he is free to take money from the other clerks or tellers without facing the prospect of additional robbery convictions.[19]

---

statute in comparison with the larceny from the person statute (life or any term of years compared with 10 years) is greater than the added protection of persons provided by the armed robbery statute in comparison with the assault with intent to rob while armed statute (life or any term of years for both offenses).

[19] The majority expresses concern that a finding of only one robbery in the one store-two cashier context would "inform a criminal that as long as he is robbing one store clerk, or bank teller, or bus passenger he is free to take money from the rest of the persons present without facing the prospect of additional robbery convictions". *Ante,* p 113. As noted in the text, however, the offender is arguably subject to prosecution for felonious assault or assault with intent to rob while armed for the assault on any other cashier.

The offender may also face an additional robbery charge if he takes money from a patron who happens to be in the store or the bank at the time. While this Court does not appear to have addressed this question, courts in other jurisdictions have generally held that in such a case there are two thefts and that the combination of the two thefts with two assaults constitutes two robberies. See, *e.g., Richardson v State,* 429 NE2d 229 (Ind, 1981); *State v Hutchinson,* 228 Kan 279; 615 P2d 138 (1980); *Johns v State,* 130 Miss 803; 95 So 84 (1922); *State v Cabell,* 539 SW2d 584 (Mo App, 1976); *Morgan v State,* 220 Tenn 247; 415 SW2d 879 (1967). See also *Ferguson v State,* 405 NE2d 902 (Ind, 1980); *State v Branch,* 223 Kan 381; 573 P2d 1041 (1978); *Wilkerson v State,* 211 Tenn 32; 362 SW2d 253 (1962); *Wiley v State,* 552 SW2d 410 (Tenn Crim App, 1977); 67 Am Jur 2d, Robbery, § 77, p 71. The constitutionality of punishing the combination of two thefts with two assaults as two separate robberies was upheld by the United States Supreme Court in *Hoag v New Jersey,* 356 US 464; 78 S Ct 829; 2 L Ed 2d 913 (1958). The holdings in these cases might be inconsistent with the single larceny rule adopted by this Court in *People v Henry Johnson,* 81 Mich 573; 45 NW 1119 (1890); see fns 7 and 8.

The bus passenger hypothetical is not on point because it involves multiple thefts combined with multiple assaults. A more appropriate analogy would be the taking of a railroad's money from two train conductors. As here, the offender in such a one taking-two assault case could properly only be convicted of one robbery, although he might face an additional charge of assault with intent to rob while armed or felonious assault for the assault on the other conductor.

Nor does the policy of concurrent sentencing support the view that the Legislature intended to authorize multiple convictions by redefining robbery as aggravated assault rather than aggravated theft. A rule of construction adopted by the courts that sentences are concurrent rather than consecutive in the absence of specific legislative authorization[20] says nothing about the intent of the Legislature regarding the substantive elements of offenses. And in *People v Martin*, 398 Mich 303, 310; 247 NW2d 303 (1976), this Court rejected the argument that concurrent sentencing justifies multiple convictions:

"The fact that the two sentences are to run concurrently does not allow a different result. The 'double punishment' proscribed for committing one offense includes the conviction and not merely the sentence. The second conviction punishes appellant in several ways, including parole considerations, impeachment at subsequent trials, habitual offender treatment, etc."[21]

In sum, neither the language of the statute nor the additional arguments advanced in the majority opinion demonstrate that the Legislature intended to alter the common-law rule that robbery is aggravated theft, not aggravated assault.[22]

[20] *People v Gallagher,* 404 Mich 429, 439-440; 273 NW2d 440 (1979); *In re Carey,* 372 Mich 378, 380; 126 NW2d 727 (1964); *In re Bloom,* 53 Mich 597, 598; 19 NW 200 (1884).

[21] See also *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374, 419; 280 NW2d 793 (1979) (LEVIN, J., *dissenting); Missouri v Hunter,* 459 US 359, 373; 103 S Ct 673; 74 L Ed 2d 535 (1983) (Marshall, J., *dissenting).*

[22] Since an assault is also an element of the offense of unarmed robbery, MCL 750.530; MSA 28.798, I would reach the identical result had Wakeford been convicted of two unarmed robberies. Along with the armed robbery statute involved in the present case, the unarmed robbery statute codified the common law of robbery. Its enactment in no way demonstrated a legislative intent to alter the common-law rule that robbery (whether armed or unarmed) was aggravated theft, not aggravated assault.

C

Absent clear and unmistakable evidence that the Legislature intended to provide for multiple convictions and punishments in the one store-two cashier context by departing from the common-law rule that robbery is aggravated theft, not aggravated assault, Wakeford's second robbery conviction should be vacated. In *Bell v United States*, 349 US 81, 83-84; 75 S Ct 620; 99 L Ed 905 (1955), the United States Supreme Court held that where the Congress had not clearly expressed its intent with respect to a criminal statute, the resulting ambiguity must be resolved in favor of lenity:

"When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This * * * merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses".[23]

The rule of lenity merits substantial consideration and deference here because it was stated in a

[23] See also *Ladner v United States*, 358 US 169, 178; 79 S Ct 209; 3 L Ed 2d 199 (1958):

"This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended".

single-statute multiple punishment case, and this is such a case. The statute involved in *Bell* was the Mann ·Act, which made it a criminal offense to "knowingly transport[ ] in interstate or foreign commerce * * * *any woman or girl* for the purpose of prostitution or debauchery, or for any other immoral purpose" (emphasis added).[24] The defendant pled guilty and was convicted on two counts, each referring to a different woman whom he had transported on the same trip and in the same vehicle.

The Court held that the phrase "any woman or girl" was ambiguous on the question of whether a single trip across a state line with two women should yield one or two convictions. *Id.*, pp 83-84. Absent clear and unmistakable evidence that Congress intended to impose multiple convictions and punishments, the rule of lenity required that the defendant be convicted of only one Mann Act violation although two women were victimized by his conduct. Similarly, absent clear and unmistak-· able evidence that the Legislature intended to impose multiple convictions and punishments in the one store-two cashier context by departing from the common-law rule that robbery is aggravated theft, the rule of lenity requires that Wakeford not be convicted of more than one robbery for the holdup, although two cashiers were victimized by his conduct.[25]

---

[24] 18 USC 2421.

[25] In single-statute double jeopardy cases, the intent of the Legislature is generally dispositive. See fn 3. However, part of the constitutional analysis is that legislative intent must be determined in accordance with the rule of lenity. See Comment, *Twice in Jeopardy*, 75 Yale L J 262, 316 (1965), stating that when the legislative intent is ambiguous, the Double Jeopardy Clause requires that the rule of lenity be applied to preclude multiple conviction and punishment:

"The rule of lenity is not a casual presumption about legislative intent, but a constitutionally compelled canon of construction. * * * It forbids courts to proliferate sentences out of legislative silence. The

This Court has a well-established counterpart to the rule of lenity in the rule that "a *clear* legislative intent is required to overcome what is in effect the rebuttable presumption against multiple punishment contained in the Double Jeopardy Clause, *which works as a particularized version of the rule of lenity". People v Wilder,* 411 Mich 328, 364; 308 NW2d 112 (1981) (RYAN, J., *concurring)* (emphasis added).[26] See also *People v Willie Johnson,* 406 Mich 320, 331; 279 NW2d 534 (1979); *People v Wilder, supra,* p 343 (opinion of the Court); Comment, *One With Gun Gets You Two: Deterrent or Double Jeopardy?,* 1979 Detroit C of L Rev 123, 140. This Court has declared that absent a clear and unequivocal indication by the Legislature that it intends to carve two crimes out of a single episode, "both of two convictions and their attendant punishments cannot stand". *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374, 402; 280 NW2d 793 (1979), citing, *inter alia, People v Cook,* 236 Mich 333; 210 NW 296 (1926).[27]

Since a clear and unequivocal legislative intent to alter the common-law offense by redefining robbery as aggravated assault has yet to be shown, both the United States Supreme Court's rule of lenity and this Court's presumption against multiple punishment mandate that Wakeford's second robbery conviction be vacated.

---

rule of lenity is designed to prevent multiple judicial punishment for a single legislative offense—to preclude substantive double jeopardy." *Id.*

[26] *Ante,* p 113, and fn 18.

[27] Michigan's presumption against multiple punishment, like the rule of lenity, is a canon of construction rooted in the Double Jeopardy Clause. See Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich L Rev 1001, 1026-1027 (1980).

### III

It is questionable whether this Court can properly change the codified common-law rule that robbery is aggravated theft. Even if the rule may be judicially modified, such alteration should only be made after a more thorough consideration than has been undertaken thus far.

### A

This Court has indicated that it does not have the power to enlarge the substantive criminal law. Thus it is questionable whether this Court may create an additional robbery offense by changing the common law to treat robbery as aggravated assault. "To declare what shall constitute a crime, and how it shall be punished, is an exercise of the sovereign power of a state, and is inherent in the legislative department of the government." *People v Hanrahan,* 75 Mich 611, 619; 42 NW 1124 (1889). "No principle is more universally settled than that which deprives all courts of power to infer, from their judicial ideas of policy, crimes not defined by statute or by common-law precedents." *Branch County Prosecutor v Branch Circuit Judge,* 75 Mich 488, 491; 42 NW 997 (1889). See also *People v Turmon,* 417 Mich 638; 340 NW2d 620 (1983).

To be sure, this Court in recent years has twice adopted substantive modifications of the common-law offense of murder. In *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), this Court abrogated the common-law felony-murder doctrine; in *People v Stevenson,* 416 Mich 383; 331 NW2d 143 (1982), the year and a day rule *(i.e.,* a homicide is not murder unless the victim dies within a year and a day from the infliction of the fatal injury) was abolished. The murder statutes, though, do not define or codify the elements of the common-

law offense of murder.[28] Here, by contrast, the
Legislature has codified the elements of the com-
mon-law offense of robbery.

## B

Even if this Court has the power to construct a
second robbery offense by changing the common
law, the majority opinion has laid an inadequate
foundation for doing so. This Court in *Aaron* and
*Stevenson* abolished the felony-murder doctrine
and the year and a day rule after it had martialed
an impressive array of authorities which carefully
considered the reasons for the common-law rule
and explained why the rule should be abandoned.

Here, the majority opinion does not seek to
justify modification of the common-law rule;
rather, the opinion ignores the common law and
proceeds to state the majority's view of what con-
stitutes sound public policy. Before discarding a
common-law rule, this Court is obliged to consider
the advantages and disadvantages of eliminating
the rule, the potential consequences of abolition of
the rule and whether there may be reasons why it
should be retained, and whether abolishing the
rule will make things better or create other prob-
lems that perhaps are as difficult as, or more
difficult than, those which result from its reten-
tion. This Court should not depart from the com-
mon-law rule that robbery is aggravated theft
until it is prepared both to explain and to justify
such a departure.

Such a justification will be difficult to espouse

---

[28] See MCL 750.316, 750.317; MSA 28.548, 28.549.

"Michigan case law also makes it clear that the purpose of our first-
degree murder statute is to graduate punishment and that the statute
only serves to raise an already established *murder* to the first-degree
level, not to transform a death, without more, into a murder." *People
v Aaron, supra,* p 719. See also *People v Austin,* 221 Mich 635, 644;
192 NW 590 (1923).

here. The doctrine of felony murder involved in
*Aaron, supra,* pp 689, 695 was one of "questionable
origin", and may have been part of the common
law "only of Sir Edward Coke"; the rule that
robbery is aggravated theft, on the other hand, is
"well established within the tradition of the common
law". *People v Stevenson, supra,* p 389. The
year and a day rule involved in *Stevenson,* p 392,
had, this Court found, been rendered obsolete by
modern medical science; the rule that robbery is
aggravated theft, on the other hand, has not been
attacked as having outlived its usefulness. A growing
trend of modern authority had criticized, restricted,
or abolished both the felony-murder doctrine
and the year and a day rule before the
*Aaron* and *Stevenson* decisions; the rule that robbery
is aggravated theft, on the other hand, continues
to find support in statements and holdings
by this Court and courts in other jurisdictions
across the country.[29]

In the absence of justification for a departure
from the common-law rule, this Court should retain
the rule that robbery is aggravated theft and
hold that a theft of a store's money constitutes one
robbery whether one or more than one employee
or cashier is assaulted during the holdup.

## C

The claim that robbery should be viewed as
aggravated assault conflicts with significant authority
from across the country holding that the
common-law rule that robbery is aggravated theft
survived, and was preserved in, the codification of
the offense into statute. These cases hold that the
taking of a store's (or a bank's) money constitutes

---

[29] See fn 6 and accompanying text, and text accompanying fn 30.

a single robbery although more than one employee is assaulted. See, *e.g., State v Faatea,* 65 Hawaii 156; 648 P2d 197, 198-199 (1982); *People v Nicks,* 23 Ill App 3d 435, 442; 319 NE2d 531 (1974); *Williams v State,* 395 NE2d 239, 246-249 (Ind, 1979); *State v Potter,* 285 NC 238, 253; 204 SE2d 649 (1974); *State v Perkins,* 45 Or App 91, 96; 607 P2d 1202 (1980). See also *People v Williams,* 98 Mich App 510, 513; 296 NW2d 293 (1980), *lv den* 411 Mich 897 (1981).[30] In cases where an offender takes money from more than one bank teller, a majority of United States Circuit Courts of Appeal has similarly concluded that only a single robbery is committed under the federal bank robbery statute.[31] *United States v Canty,* 152 US App DC 103, 115-116; 469 F2d 114 (1972); *McDonald v Moinet,* 139 F2d 939 (CA 6, 1944), *cert den* 322 US 730; 64 S Ct 942; 88 L Ed 1565 (1944); *United States v Fleming,* 504 F2d 1045, 1053-1055 (CA 7, 1974); *Vautrot v United States,* 144 F2d 740, 741 (CA 8,

---

[30] *Contra: People v Guerin,* 22 Cal App 3d 775; 99 Cal Rptr 573 (1972); *State v Shoemake,* 228 Kan 572; 618 P2d 1201 (1980); *Commonwealth v Levia,* 385 Mass 345; 431 NE2d 928 (1982); *State v Johnson,* 499 SW2d 371 (Mo, 1973). Although these courts have concluded that robbery should now be defined as aggravated assault, they have done so without first recognizing that the offense was considered to be aggravated theft at common law and analyzing the reasons and justifications for redefining the offense.

[31] 18 USC 2113(a) provides:

"Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

1944); *United States v Faleafine,* 492 F2d 18 (CA 9, 1974).[32]

In *State v Faatea, supra,* the Supreme Court of Hawaii recently rejected the claim that robbery should be deemed aggravated assault. In that case, the defendant was charged with five violations of the robbery statute after he took a hotel's weekend receipts and petty cash box at gunpoint from an office in which five hotel employees were present. The court held that the defendant could only be convicted of a single robbery:

"This court has held that robbery is merely an aggravated form of theft, *State v Brighter,* 62 Hawaii 25; 608 P2d 855 (1980), and *inasmuch as there was but one act of theft here, from one owner, we are constrained to hold that the defendant could be convicted and sentenced for but one robbery offense.* The theft was of Ramada Inn property, and each of the five employees named were simply custodians of the property for the benefit of their employer. The threatened use of force was directed against all five for the purpose of effectuating the unlawful taking of their employer's property. It was this threat which converted the taking from theft

[32] Moreover, if robbery is to be viewed as aggravated assault rather than aggravated theft, then it becomes difficult to explain the countless single taking-multiple assault cases across the country in which the courts were never confronted with this question because the defendants were not charged with more than one robbery. See, *e.g., Pierce v State,* 627 P2d 211 (Alas App, 1981); *Green v State,* 185 Ark 1098; 51 SW2d 511 (1932); *People v Miller,* 18 Cal 3d 873; 135 Cal Rptr 654; 558 P2d 552 (1977); *Hampton v People,* 146 Colo 570; 362 P2d 864 (1961); *Castleberry v State,* 402 So 2d 1231 (Fla App, 1981); *State v Grimm,* 240 Iowa 471; 35 NW2d 647 (1949); *State v Rafferty,* 145 Kan 795; 67 P2d 1111 (1937); *Johnson v State,* 9 Md App 143; 262 A2d 792 (1970); *State v Jones,* 145 Ohio St 136; 60 NE2d 654 (1945); *Wilkerson v State,* 211 Tenn 32; 362 SW2d 253 (1962); *Smallwood v State,* 607 SW2d 911 (Tex Crim App, 1980). That proper focus upon the theft rather than the assault prevents the proliferation of "the number of charges against a defendant by artificially dividing a clearly single major offense into an unreasonable number of related components". *People v Jankowski,* 408 Mich 79, 92, fn 8; 289 NW2d 674 (1980).

to robbery. Thus, *there was only one aggravated theft (robbery) for which a sentence could be imposed." Id.,* 65 Hawaii 157 (emphasis added).

Similarly, here the theft was of property belonging to Danny's Market. Each of the two cashiers named was simply a custodian of the property for the benefit of her employer. The threatened use of force was directed against each for the purpose of effectuating the unlawful taking of the employer's property. "Thus, there was only one aggravated theft (robbery) for which a sentence could be imposed." *Id.*[33]

## IV

I concur with the conclusions set forth in the majority opinion on the remaining two issues raised by this appeal. I agree that the judge did not err in ruling that evidence of Wakeford's prior convictions was admissible.[34] I also agree that although Wakeford was not denied his constitutional right to counsel during trial, the judge's failure to obtain a knowing and intelligent waiver of the

[33] This analysis does not require that an offender be convicted of two robberies where he assaults a single cashier but takes that cashier's personal property (*e.g.,* a purse or wallet) as well as the store's money contained in the cash register. As previously stated, only one larceny or theft is committed under these circumstances. See fn 8. "Thus, there [is] only one aggravated theft (robbery) for which a sentence could be imposed." *State v Faatea, supra,* p 157.

Courts which have confronted this question, including a North Carolina appellate court acting after the Supreme Court of North Carolina had found only a single robbery in the one store-two cashier context, have generally held that an offender who takes both a cashier's personal property and the money in the cash register has committed one robbery. See, *e.g., Creecy v State,* 235 Ga 542; 221 SE2d 17 (1975); *State v McQueen,* 224 Kan 420; 582 P2d 251 (1978); *State v Sellars,* 52 NC App 380; 278 SE2d 907 (1981); *Commonwealth v Lockhart,* 223 Pa Super 60; 296 A2d 883 (1972). But see *McKinley v State,* 400 NE2d 1378 (Ind, 1980).

[34] *Ante,* p 100.

right to counsel at the time of sentencing requires resentencing.[35]

## V

In conclusion, when the Legislature enacted § 529 of the Penal Code, it codified the common-law offense of robbery. At common law, robbery was viewed as aggravated theft, not aggravated assault. Accordingly, a single taking of a store's money constitutes only one robbery, although two cashiers are assaulted during the holdup.

The Legislature has not indicated that it intended to alter this common-law rule. The language of the robbery statute parallels the common-law definition of the offense. Neither the language of the robbery statute nor the other circumstances cited in the majority opinion demonstrate a clear and unmistakable legislative intent to convict and punish an offender in the one store-two cashier context twice by redefining the crime of robbery as aggravated assault. Absent such a clear and unmistakable intent, the rule of lenity and the case law of this and other courts mandate that only a single conviction and punishment be imposed.

Where the Legislature has codified the common law, it is doubtful that this Court possesses the power to change the common law so as to create a new crime. If this Court does possess such power, the common-law rule should only be modified after a more thorough consideration of the justifications for the rule and the consequences of changing the rule than has yet been undertaken. Absent such an analysis, this Court should, consistent with the rule in a number of other states and the prevailing rule in the federal courts, adhere to the common-

---

[35] *Ante,* p 100.

law rule and hold that Wakeford, who took a grocery store's money from two cashiers, committed only one aggravated theft and therefore may be convicted of only one robbery.

I would affirm one of Wakeford's convictions of armed robbery and vacate the other armed robbery conviction, and to that extent would reverse and remand to the trial court for entry of a corrected judgment of conviction and further proceedings consistent with this opinion.

KAVANAGH, J. I concur in the result reached by Justice LEVIN for I think it serves little purpose to argue over how many fallen angels can dance on the head of one criminal pin.

My understanding of the "double jeopardy" concept is that it is concerned with multiplication rather than magnification and precludes multiple charges and multiple punishment for a single crime.

Dividing one criminal act into many parts and treating each as a separate crime offends this concept. The single act of holding up one grocery store should be punished as one crime without regard to how many individuals happened to be on the premises at the time or indeed who held title to the property taken.

The number of people affected by a criminal act magnifies but does not multiply the crime. The gravamen of a crime is the offense against all of the people, not the number of "victims".

Inasmuch as the greatest crime of each classification is embraced in our separate criminal statutes, a single charge of such crime should be considered to provide appropriate penalty upon conviction.

In this case conviction of a single count of armed

robbery would support a sentence of life in prison. Such penalty should satisfy the requirements of vengeance of the most righteous.

Sufficient unto the day is the evil thereof.

I would affirm conviction of one count of armed robbery and remand for resentencing.

BOYLE, J., took no part in the decision of this case.