*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JORDAN DAVID SPARKS,

      Defendant-Appellant.

UNPUBLISHED
March 14, 2019

No. 341027
Muskegon Circuit Court
LC No. 16-006186-FH

Before: RIORDAN, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his convictions of three counts of first-degree home invasion, MCL 750.110a(2), interfering with the reporting of a crime, MCL 750.483a(2)(b), and resisting and obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 10 to 40 years' imprisonment for each of the first-degree home invasion convictions, 10 to 20 years' imprisonment for the conviction on interfering with the reporting of a crime, and to 2 to 4 years' imprisonment for the resisting and obstructing conviction. We vacate two of the home invasion convictions and sentences on double jeopardy grounds, remand for modification of defendant's judgment of sentence to reflect a conviction and sentence for one count of first-degree home invasion supported by multiple theories, and affirm the remaining convictions and sentences.

In the early morning hours of December 4, 2016, defendant entered his ex-wife's home through a window. His ex-wife, their child, and the ex-wife's boyfriend were present in the home at the time. When defendant entered the home, he proceeded to yell at his ex-wife and knocked the telephone out of her hand when she called 911. Defendant also became involved in a physical altercation with his ex-wife's boyfriend. When defendant realized that the police had arrived, he took a knife from the kitchen and used it to cut his own wrists.

On appeal, defendant argues that his three convictions for a single home invasion violated the constitutional prohibition against double jeopardy and unfairly increased the minimum sentence guidelines range. In an associated argument, defendant maintains that trial counsel was ineffective for failing to object to the double jeopardy violation. Accordingly, the issue that we

must resolve is whether a person who commits a single home invasion can be punished for multiple counts of home invasion corresponding in number to the number of persons being in the home at the time of the offense. We review de novo a double jeopardy challenge. *People v Bosca*, 310 Mich App 1, 41; 871 NW2d 307 (2015).

In *People v Miller*, 498 Mich 13, 17-19; 869 NW2d 204 (2015), the Michigan Supreme Court set forth a concise statement of the law that is applicable to the instant case:

> The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb. . . ." The Michigan Constitution similarly provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy." The prohibition against double jeopardy protects individuals in three ways: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. The first two protections comprise the "successive prosecutions" strand of double jeopardy, while the third protection is known as the "multiple punishments" strand. . . . .

> The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts. The multiple punishments strand is not violated where a legislature specifically authorizes cumulative punishment under two statutes. Conversely, where the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial. Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed.

> The Legislature, however, does not always clearly indicate its intent with regard to the permissibility of multiple punishments. When legislative intent is not clear, Michigan courts apply the "abstract legal elements" test articulated in *Ream*[1] to ascertain whether the Legislature intended to classify two offenses as the "same offense" for double jeopardy purposes. This test focuses on the statutory elements of the offense to determine whether the Legislature intended for multiple punishments. Under the abstract legal elements test, it is not a violation of double jeopardy to convict a defendant of multiple offenses if each of the offenses for which defendant was convicted has an element that the other does not. This means that, under the *Ream* test, two offenses will only be considered

---

[1] *People v Ream*, 481 Mich 223; 750 NW2d 536 (2008).

the "same offense" where it is impossible to commit the greater offense without also committing the lesser offense.

In sum, when considering whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy, we must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent. If, however, the legislative intent is not clear, courts must then apply the abstract legal elements test articulated in *Ream* to discern legislative intent. [Citations, quotation marks, and ellipses omitted; alteration in original.]

Here, there is no dispute that we are concerned with the "multiple punishments" strand of double jeopardy. The statutory provision at issue is MCL 750.110a, and it provides, in relevant part, as follows:

(2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

With respect to MCL 750.110a, we initially conclude that nothing in the language of the statute specifically prohibits multiple punishments. Indeed, the Legislature authorized cumulative punishment, but only in connection with another statutory offense. MCL 750.110a(9) ("Imposition of a penalty under this section does not bar imposition of a penalty under any other applicable law."). The prosecutor contends that the Legislature effectively authorized convictions and sentences for multiple counts of first-degree home invasion when more than one person is in the home even though there was only a single breaking and entering or unpermitted entry into the home. In support, the prosecution cites MCL 777.16f, which indicates that MCL 750.110a(2) is a crime against a "[p]erson." In *People v Perry*, 317 Mich App 589; 895 NW2d 216 (2016), this Court held that multiple convictions for uttering counterfeit notes based on a single transaction did not violate the defendant's double jeopardy protections. As part of its analysis, the *Perry* panel stated:

When the dispositive question is whether the Legislature intended two convictions to result from a single statute, it presents a "unit of prosecution"

-3-

issue. The question is whether the Legislature intended a single criminal transaction to give rise to multiple convictions under a single statute.[2]

> When analyzing a statute to determine what unit of prosecution the Legislature intended, this Court and our Supreme Court have focused on various aspects of the statutory text. In [*People v*] *Barber*, 255 Mich App [288, 295; 659 NW2d 674 (2003)], this Court focused on the harm that the statutory text intended to prevent when it held that there was no double jeopardy violation because the arson statutes aimed "to prevent the burning of a dwelling, building, or other real property," and each separate house was the proper unit of prosecution. . . . In [*People v*] *Wakeford*, 418 Mich [95, 111-112; 341 NW2d 68 (1983)], the Court focused on the statutory text's reference to the victim in the singular and on the purpose of the statute. In that case, the Court noted that the text in the armed robbery statute consistently referred to the victim in the singular and that protecting people was the primary purpose of the statute, and the Court concluded that "the appropriate 'unit of prosecution' for armed robbery is the person assaulted and robbed." . . . .
>
> In this case, defendant argues that only one transaction or exchange of counterfeit bills occurred and, accordingly, that only one conviction of uttering and publishing could be sustained. This approach was specifically disavowed in *Wakeford* when the Court wrote: "To the extent certain language in [various cases] suggests that the critical test is whether the defendant committed 'one single wrongful act,' we specifically disavow that test. It is up to the Legislature, not this Court, to determine what constitutes a single offense." Therefore, the determination of this issue requires us to analyze the statutory text to determine the intent of the Legislature. [*Perry*, 317 Mich App at 603-604 (citations omitted; latter alteration in original)].

Turning to the statute at hand in *Perry*, this Court held "that the clear intent of the statute, as expressed by the Legislature's use of the singular 'note,' is to address placing counterfeit and false bills into the stream of commerce," and that the statute revealed "the Legislature's intent to punish a defendant for each counterfeit bill that was introduced, uttered, passed, or tendered because the text reflects an intent to prevent counterfeit bills from being used." *Id.* at 605.

Returning our attention to MCL 750.110a(2), we note that the statute prohibits a person from breaking and entering or impermissibly entering "a dwelling" and committing certain enumerated offenses during the home invasion, or making an unlawful entry with the intent to commit one of those offenses, while armed with a dangerous weapon or while "another person is lawfully present in the dwelling." Construing the language as a whole, it becomes clear to us

---

[2] The panel noted "that, contrary to the prosecution's argument on appeal that the 'unit of prosecution' theory 'has nothing to do with the Double Jeopardy Clause,' this Court has reviewed 'unit of prosecution' issues in the context of double jeopardy." *Perry*, 317 Mich App at 601.

that the "unit of prosecution" must be based on or measured by the unlawful entry of a dwelling and not on the number of persons who are present in the dwelling when the unlawful entry is made. Indeed, no other conclusion can be reached because the crime of first-degree home invasion can be committed absent any person being in the dwelling at the time of the unlawful entry if the defendant made the entry armed with a dangerous weapon. This is in contrast to armed robbery, which requires the presence of a person who is being directly victimized by a defendant as part of the robbery. The prosecution's reliance on MCL 777.16f, which designates first-degree home invasion as a crime against a person, is misplaced. That statutory provision is only relevant for purposes of the sentencing guidelines. See Chapter XVII of the Code of Criminal Procedure, Sentencing Guidelines. In sum, the Legislature did not authorize cumulative punishment under MCL 750.110a(2) based on the number of persons inside a home that was the site of a home invasion.

Furthermore, the three counts of first-degree home invasion constitute the "same offense" under the "abstract legal elements" test. In *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010), our Supreme Court explained the alternative ways to secure a conviction for first-degree home invasion under the statute:

The alternative elements of first-degree home invasion can be broken down as follows:

Element One: The defendant *either:*

1. breaks and enters a dwelling or

2. enters a dwelling without permission.

Element Two: The defendant *either:*

1. intends when entering to commit a felony, larceny, or assault in the dwelling or

2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, *either:*

1. the defendant is armed with a dangerous weapon or

2. another person is lawfully present in the dwelling.

In *People v Baker*, 288 Mich App 378; 792 NW2d 420 (2010), the defendant broke into the victim's apartment with intent to commit a larceny inside and then he sexually assaulted her, resulting in a conviction for two counts of first-degree home invasion. This Court observed that "it appears that defendant was actually convicted of one count of first-degree home invasion because he broke into and entered the victim's apartment with the intent to commit a larceny, and was convicted of another count of first-degree home invasion because he broke into and entered

-5-

the victim's apartment and, while inside her apartment, actually committed criminal sexual conduct." *Id.* at 383-384. This Court ruled:

> To the extent that the prosecution contends that a separate home-invasion charge can be brought corresponding to each felony, larceny, or assault that defendant committed while in the dwelling, it has provided no authority to support this argument and, for this reason, we need not consider this argument. Further, the Legislature has not created separate statutes criminalizing home invasion when different underlying wrongful acts committed during the home invasion are at issue, and the statute itself does not support the notion that the Legislature intended to create a separate offense for home invasion corresponding to each type of actual or intended underlying crime occurring within the dwelling during the same invasion. Instead, the statute simply indicates that establishing that defendant committed (or intended to commit) at least one felony, larceny, or assault while in the dwelling is sufficient to satisfy this element. If anything, the claim that defendant intended to commit two predicate offenses while in the victim's apartment simply constitutes two separate theories under which his first-degree home-invasion conviction could be established.

> Accordingly, defendant's convictions for two counts of first-degree home invasion constitute plain error. Instead, in light of the jury's verdict, defendant should have been convicted and sentenced for one count of first-degree home invasion supported by two theories. . . . [W]e direct the trial court to vacate one of defendant's convictions and sentences for first-degree home invasion and modify defendant's judgment of sentence to specify that defendant's relevant conviction and sentence is for one count of first-degree home invasion supported by two theories. Of course, the balance of defendant's judgment of sentence and conviction would remain unaltered . . . . [*Id.* at 385-386 (citations omitted).]

In the instant case, the jury was asked to resolve three separate counts of home invasion, with, as to the third element of the offense, each count making reference to one of the three persons inside the home at the time of the home invasion and each count alternatively allowing conviction on the basis of a dangerous weapon being involved. Under the analysis set forth in *Baker*, defendant should have been convicted of one count of first-degree home invasion and sentenced on the basis of one count of first-degree home invasion supported by at least three different theories—each of the three persons in the home—and possibly up to six theories depending on whether each conviction was based on the person's being present and/or defendant's being armed with a dangerous weapon.

In light of our ruling, we need not address defendant's associated claim of ineffective assistance of counsel. Finally, defendant argues that the double jeopardy error also affected the length of his sentence because the two extra counts changed the scoring of offense variable (OV) 13. We disagree.

Under OV 13, the trial court must assess 25 points when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Here, the trial court assessed 25 points for OV 13. "For determining the

appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Taking into consideration only a single count of first-degree home invasion, not three counts, along with the other two felonies for which he was convicted, interfering with the reporting of a crime, MCL 750.483a(2)(b), and resisting and obstructing a police officer, MCL 750.81d(1), a score of 25 points is appropriate for OV 13.[3] Accordingly, resentencing is not warranted.

We vacate two of the home invasion convictions and sentences on double jeopardy grounds, remand for modification of defendant's judgment of sentence to reflect a conviction and sentence for one count of first-degree home invasion supported by multiple theories, and affirm the remaining convictions and sentences. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Anica Letica

---

[3] MCL 777.43(2)(c) provides that "[e]xcept for offenses related to membership in an organized criminal group or that are gang-related, do not score conduct scored in offense variable 11 or 12." The trial court assessed zero points for OVs 11 and 12.